CITIZENS & SOUTHERN NATIONAL BANK *v.* KING *et al.*

NO. 11604.   MARCH 13, 1937.   ADHERED TO ON REHEARING MARCH 27, 1937.

*Alston, Alston, Foster & Moise* and *Henry J. Miller,* for plaintiff in error.

*Smith, Smith & Bloodworth, Ezra E. Phillips, J. E. Feagin, Douglas, Andrews & Cole, Neely, Marshall & Greene, Evins, Quillian & Evins, Brandon, Hynds & Tindall, Harold Hirsch, Marion Smith, Robert S. Parker,* and *Craighead & Dwyer,* contra.

KNOX, Judge.  On January 13, 1933, Alexander C. King filed his petition for equitable relief, the defendants named being A. J. Orme, C. H. Black, Atlanta Trust Company, Citizens and Southern National Bank of Atlanta, First National Bank of Atlanta, Fulton National Bank of Atlanta, and the Federal Reserve Bank of Atlanta, Georgia.  The petition was brought by King in his capacity as a minority stockholder of the Atlanta Trust Company,

and was brought for the benefit of all other stockholders of said corporation who might desire to become parties to the action.

Briefly stated, the petition sets forth the following facts and contentions: King is the owner and holder of one hundred shares of the capital stock of the Atlanta Trust Company, of the par value of ten thousand dollars. On December 3, 1929, a contract was entered into between the Atlanta Trust Company and the Citizens and Southern National Bank; and on the same day a contract was entered into between the Atlanta Trust Company, the Citizens and Southern National Bank, and the other banking institutions named as parties defendant. Copies of these two contracts are attached to the petition as exhibits. Under the terms of the contract entered into between the Atlanta Trust Company and the Citizens & Southern Bank all the property and assets of every kind and nature owned by the Atlanta Trust Company was conveyed to the Citizens & Southern Bank, and this bank on its part assumed and agreed to pay all the debts and obligations of the Atlanta Trust Company, as shown by its statement, except capital stock, surplus funds, undivided profits, and income. The Citizens & Southern Bank was obligated to liquidate the assets of the Atlanta Trust Company as speedily as the same could be reasonably liquidated, it being specified that such liquidation should be brought to a close on or before the end of three years, unless the Citizens & Southern Bank should extend the period of liquidation in writing. Under the terms of the agreement the Citizens & Southern Bank was empowered to extend the period of liquidation if it saw fit to do so. The Citizens & Southern Bank had purchased outright the office building of the Atlanta Trust Company and certain leasehold interests belonging to that institution. The purchase-price thereof, together with the cash which the Atlanta Trust Company had on hand at the time, was to be credited against the amount representing the obligations assumed by the Citizens & Southern Bank. After deducting these items the Citizens & Southern Bank was to receive interest on the obligations assumed by it at the rate of six per cent. per annum. It was also agreed that the Atlanta Trust Company was to be credited with the interest accruing from its interest-bearing assets as the same were collected by the Citizens & Southern Bank. It was further agreed that when the Citizens & Southern Bank

had realized sufficient funds from the collection of the assets of the Atlanta Trust Company, conveyed under the terms of the contract, to reimburse it for the debts and obligations it had assumed, it should return to the Atlanta Trust Company, or to its successors and assigns, all remaining property and assets so conveyed. For a long period of time before the execution of said contract the Atlanta Trust Company had been engaged in a general banking and trust business in Atlanta, and upon the execution of the contracts said corporation ceased to do business as a banking institution. On the next day the depositors and customers of the Atlanta Trust Company presented their checks to the Citizens & Southern Bank, and the same were paid by that institution at its place of business in Atlanta.

On the date the petition was filed (January 13, 1933) the greater portion of the assets conveyed by the Atlanta Trust Company to the Citizens & Southern Bank had by collection been reduced to cash, and from the proceeds thus derived all obligations due to the depositors of the Atlanta Trust Company had been fully paid and satisfied. It was asserted that from such proceeds practically all other debts and obligations of the Atlanta Trust Company, except such sums as may be due to the banks named as defendants, had been paid and satisfied. There remained in the hands of the Citizens & Southern Bank assets valued by its officials at $294,431, but valued by the officials of the Atlanta Trust Company at $371,431, these assets belonging to the Atlanta Trust Company and having been conveyed to the Citizens & Southern Bank under the terms of said contract. On December 3, 1932, the three-year period of liquidation specified in the contract expired, and the Atlanta Trust Company requested the Citizens & Southern Bank to extend the period of liquidation. This request was refused, and the Citizens & Southern Bank retains in its possession all the remaining unliquidated assets above referred to. The Citizens & Southern Bank contends that the Atlanta Trust Company is still indebted to it, on the debts and abligations paid and assumed, approximately $130,000, and it claims a lien on the remaining unliquidated assets of the Atlanta Trust Company until this indebtedness is paid and satisfied. This contention is disputed by the Atlanta Trust Company, which contends that such indebtedness does not exceed $95,000. The Citizens & Southern

Bank is insisting that the indebtedness claimed against the Atlanta Trust Company be paid, and, unless it is paid, that the Citizens & Southern Bank, under the terms of the contract entered into between these institutions and the other banks named as defendants, will call on the First National Bank, the Fulton National Bank, and the Federal Reserve Bank to pay the amount claimed to be due it by the Atlanta Trust Company. If this is done, the Citizens & Southern Bank, under the terms of the contract, will dismember such remaining unliquidated assets and distribute them pro rata to the banking institutions discharging the obligation. This will be done without regard to the rights and interests of petitioners and all other stockholders of the Atlanta Trust Company. The terms of the contracts referred to do not provide any contractual method of ascertaining any loss which may be sustained by the Citizens & Southern Bank by reason of its contract with the Atlanta Trust Company; but inasmuch as the Citizens & Southern Bank is in possession of unliquidated assets valued at more than double the amount of its claimed indebtedness, it has not up to this time sustained any loss. It is contended that under such circumstances it would be illegal and inequitable to permit the Citizens & Southern Bank to call on the other named banks to pay the indebtedness claimed against the Atlanta Trust Company. Such action would result in the dismembering of the remaining unliquidated assets belonging to the Atlanta Trust Company and the distribution of them to the banks making payments to the Citizens & Southern Bank. This would entail a loss to petitioners and all other stockholders of the Atlanta Trust Company.

Under the terms of the contract entered into between the Atlanta Trust Company and the Citizens & Southern Bank, the Citizens & Southern Bank is entitled to expenses, attorneys' fees, and salaries incurred in preserving and managing the assets and properties conveyed to it by the Atlanta Trust Company, but is not authorized to make any charges for its services or for clerical or overhead expenses. Under the terms of said contract all the property and assets conveyed by the Atlanta Trust Company to the Citizens & Southern Bank were conveyed as a trust, and all the proceeds arising from the liquidation of such property and assets, including its trust business, were and are applicable as a credit in

favor of such trust estate. The Citizens & Southern Bank has already realized a profit of $35,000 from the trust business of the Atlanta Trust Company, but has not applied the same to the credit of the trust estate. This item constitutes one of the substantial differences existing between the two institutions relatively to the balance due to the Citizens & Southern Bank by the Atlanta Trust Company. The Citizens & Southern Bank contends that this balance amounts to $130,000, while the Atlanta Trust Company insists that it will not exceed the sum of $95,000. Therefore it is necessary to have an accounting between the two institutions, to ascertain the true amount. The Atlanta Trust Company has endeavored to raise sufficient funds, by subscriptions from its stockholders, to pay the balance due to the Citizens & Southern Bank, but has failed to do so. On November 1, 1932, at a meeting of the stockholders of the Atlanta Trust Company a resolution was passed, providing for the organization of a new and independent corporation to purchase and absorb the remaining unliquidated assets of the Atlanta Trust Company held by the Citizens & Southern Bank. This scheme originated with defendants A. J. Orme and C. H. Black, and others associated with them, whose names are unknown. Orme, Black, and their associates propose to organize such independent corporation, and thus raise sufficient capital to purchase from the Citizens & Southern Bank said remaining unliquidated assets. These assets will be purchased from the Citizens & Southern Bank for the amount claimed to be due the Citizens & Southern Bank by the Atlanta Trust Company, which is the sum of $130,000. These assets at a fair valuation have a net value of from $150,000 to $200,000. Orme, Black, and their associates in this scheme own a majority of the stock in the Atlanta Trust Company, and include a majority of the trustees of said institution. This scheme contemplates the exclusion and elimination of all stockholders of the Atlanta Trust Company who fail or refuse to subscribe for stock in the new and independent corporation. This exclusion · and elimination is specifically provided for under the terms of the resolution adopted at the meeting of the stockholders of the Atlanta Trust Company, held on November 1, 1932. The consummation of this scheme will enure to the benefit and profit solely of the persons who subscribe to stock in the new corporation, and will eliminate petitioners and other stock-

holders of the Atlanta Trust Company, who have not, can not, or will not subscribe for stock in said proposed corporation. This will be done in total disregard of the rights and interests of petitioners and other stockholders occupying a like situation. Such conduct on the part of Orme and Black and other officials of the Atlanta Trust Company who may be associated with them in such schemes constitutes a breach of their trust as such officers and officials, the sale of said assets under such circumstances being illegal and inequitable. The Citizens & Southern Bank is in sympathy with and approves the proposals of Orme, Black, and their associates, with reference to the purchase and sale of said unliquidated assets, and is withholding action with reference to demanding reimbursement from the other banks named as defendants. In so doing, the Citizens & Southern Bank hopes that the plans of Orme, Black, and their associates will be consummated, and that said persons will purchase the unliquidated assets from the Citizens & Southern Bank. This will be done at such price and on such terms as may be acceptable to the Citizens & Southern Bank, with the result that all equity in said assets will be destroyed.

The prayers of the petition are: (1) For process. (2) For restraining order enjoining Orme, Black, and their associates, from purchasing the unliquidated assets of the Atlanta Trust Company. (3) For appointment of a receiver to take over and administer such assets. (4) For accounting between the Atlanta Trust Company and Citizens and Southern National Bank, to ascertain the true amount due to Citizens & Southern Bank by Atlanta Trust Company. (5) For judgment and decree awarding funds arising from the administration of said assets by the receiver. (6) For general relief. On January 21, 1933, the plaintiffs amended their petition by striking the name of C. H. Black as a party defendant.

On April 27, 1933, the Citizens and Southern National Bank filed its general demurrer on the following grounds: (1) The petition sets forth no cause of action against this defendant. (2) It contains no allegations authorizing the appointment of a receiver. (3) There are no allegations authorizing appointment of a receiver in equity for the assets therein referred to. (4) The petition contains a misjoinder of causes of action. (5) The petition contains no allegations setting forth a cause of action against this defendant for an accounting.

On April 17, 1936, the plaintiffs presented an amendment to their original petition, which was allowed subject to demurrer. This amendment, after stating that the plan of Orme and his associates had been abandoned, struck the name of A. J. Orme as a defendant, struck certain paragraphs of the original petition with reference to said plan, and struck from the petition those paragraphs which relate to the execution of the contracts entered into between the banking institutions named as defendants, and inserted in lieu thereof allegations to the effect that said contracts were illegal and void. It also struck all the prayers of the petition except the prayers for process and general relief. The amendment alleged that the contract entered into between the Atlanta Trust Company and the Citizens & Southern Bank on December 3, 1929, constituted a voluntary liquidation of the banking business of the Atlanta Trust Company within the purview and intendment of the banking laws of this State, and that, inasmuch as said liquidation was entered into without first obtaining the consent of the stockholders owning two thirds of the stock of that institution, the contract of liquidation was illegal and void; that the Citizens & Southern Bank had taken over and liquidated the assets of the Atlanta Trust Company under an illegal and void contract, and in doing so it occupied the position of a trustee ex maleficio; and that as such trustee the Citizens & Southern Bank was liable to the Atlanta Trust Company in damages for any and all losses suffered by the Atlanta Trust Company by reason of this liquidation of its property and assets. As items of loss the amendment designated loss on its office building, interest illegally collected, loss of trust business, and destruction of the deposit business of the Atlanta Trust Company. These alleged losses total $477,259.75. In this connection it is recited that before the execution of the contract the Citizens & Southern Bank had agreed to purchase the office building of the Atlanta Trust Company for $1,500,000; that the market value of the building was this amount; that the Citizens & Southern Bank refused to comply with this agreement, and took said building over under the void contract for $1,400,000, thus entailing a loss to the Atlanta Trust Company in the sum of $100,000; that under the contract, alleged to be void and illegal, the Citizens & Southern Bank had retained, as interest from the proceeds arising from the liquida-

tion of the assets of the Atlanta Trust Company, the sum of $102,-259.75; that from the trust business of the Atlanta Trust Company the Citizens & Southern Bank had realized a profit of $75,-000 during the period of liquidation; and that the liquidation of the assets of the Atlanta Trust Company by the Citizens & Southern Bank had resulted in the destruction of the deposit business of the Atlanta Trust Company. This business was alleged to be of the value of $200,000, and the loss of the Atlanta Trust Company on this item is alleged to be that amount. All of such losses are alleged to have resulted from the liquidation of the property and assets of the Atlanta Trust Company by the Citizens & Southern Bank, which assets the amendment alleges were wrongfully taken over and illegally liquidated under the void contract of December 3, 1929.

In addition to the above amounts, the amendment recites that the Atlanta Trust Company procured a loan of $120,000 from the Reconstruction Finance Corporation, and that this sum was paid to the Citizens & Southern Bank on the balance claimed to be due by the Atlanta Trust Company to the Citizens & Southern Bank; that at the time this sum was paid the Citizens & Southern Bank was in possession of the remaining unliquidated assets of the Atlanta Trust Company, and refused to release the same until such payment was made; that the Citizens & Southern Bank was in illegal possession of said assets and was retaining the same under the illegal and void contract hereinbefore referred to; that it was the duty of the Citizens & Southern Bank to turn over such assets to the Atlanta Trust Company without payment; and that the Atlanta Trust Company is entitled to an accounting on said item. The amendment further sets forth that the name of the Atlanta Trust Company was signed to the contracts of December 3, 1929, by A. J. Orme, its president, without the approval and consent of two thirds of the stockholders of that institution; that A. J. Orme and the other officers of the Atlanta Trust Company who were present on that occasion were laboring under a conviction that the affairs of said institution were facing an immediate necessity, and that A. J. Orme was coerced into signing said contract by the conduct of the officials of the Citizens & Southern Bank and those of the other banks who are parties to said contracts; that continuously since the signing of said contract until November, 1933,

the officers of the Atlanta Trust Company remained under the domination of the officers of the Citizens & Southern Bank, and performed their duties in accordance with the orders and directions given them by that bank; that no official act or duty was performed without the approval of the Citizens & Southern Bank and without the direction of that institution; that the stockholders of the Atlanta Trust Company during said period met only at rare intervals, and seldom transacted any business except the election of a board of trustees to serve during the current year; that the board of trustees of said Atlanta Trust Company likewise met only at infrequent intervals, and transacted no business except as ordered by the Citizens & Southern Bank; that said stockholders and trustees felt that they were helpless under prevailing conditions; and that they were compelled to take such action and do such things as the Citizens & Southern Bank demanded; and that under the conditions existing during the period of liquidation it would have been futile and useless to apply to the stockholders or trustees for redress of the wrongs complained of, and under the circumstances related it was not reasonable to require it.

The prayers of the amendment were: (1) To strike from the prayers of the original petition paragraphs (b), (c), (d), and (e), and add in lieu thereof. (2) That an accounting be had between the Atlanta Trust Company and the Citizens & Southern National Bank as to the items and claims referred to in the amended petition. (3) That decree be rendered in favor of petitioners and all parties entitled thereto, against the Citizens & Southern National Bank, for the items referred to in paragraph 82 of this amendment, or so much thereof as is found to be just, equitable, and proper; and any additional amounts and damages shown on the trial, and in the accounting prayed in this case. (4) That the Citizens & Southern Bank be required to deliver up the books, accounts, files, documents, and papers showing the trust business of the Atlanta Trust Company. (5) For general relief.

On May 1, 1936, the Citizens & Southern National Bank presented its motion to set aside and revoke the order allowing said amendment, on the ground that it set forth a new and distinct cause of action. On May 1, 1936, the Citizens & Southern National Bank filed its demurrer to said amendment, on the grounds that the amendment set up a new, distinct, and different

cause of action; that said amendment set forth no cause of action against this defendant; that said amendment showed on its face that the plaintiffs were barred from the relief prayed for because of laches; and that said amendment showed on its face that the plaintiffs were estopped from the relief prayed for. To orders of the court overruling the demurrer and denying the motion to revoke the allowance of the amendment, the Citizens & Southern National Bank excepted.

In this case the only assignment of error requiring consideration is that complaining of the overruling of the general demurrer to the amended petition. It is true that error is assigned upon the order overruling the general demurrer to the original petition, but this order was signed after the amendment to the petition had been allowed, the order reciting the allowance of the amendment. Therefore both demurrers will be considered with reference to the amended petition only. The plaintiff in error likewise assigned error on the judgment denying the prayers of its petition to revoke the order allowing the amendment, but inasmuch as the grounds urged in support of this petition are included in and covered by the demurrers, a separate consideration of this assignment of error is unnecessary. For the purpose of demurrer all allegations in the petition that are well pleaded must be taken as true; and since no special demurrer was filed, all allegations of the petition must be treated as well pleaded, except those which are clearly mere conclusions of the pleader. The first ground of demurrer is that the petition sets forth no cause of action against the defendant, and a consideration of this ground requires an understanding of the case as a whole from the standpoint of the defendants in error. It is obvious that the case of the plaintiffs is wholly dependent upon their contention that the contract entered into on December 3, 1929, between Atlanta Trust Company and the Citizens & Southern National Bank is a void instrument. Practically all the complaints and all the relief prayed for are predicated upon this assumption. It is clear that if this contract is a valid and binding obligation, the plaintiffs' case fails.

The plaintiffs contend that this contract, together with the acts of the Citizens & Southern Bank in taking over and administering the property, assets, and affairs of the Atlanta Trust

Company under the powers and authority conferred therein, constituted a voluntary liquidation of a banking institution within the purview of the banking laws of this State; and that, inasmuch as such liquidation was entered into without first obtaining the consent and approval of the stockholders owning two thirds of the stock of the Atlanta Trust Company, all action taken with reference to the matter was illegal and unauthorized; that said property and assets were wrongfully taken over by the Citizens & Southern Bank under the terms of a void contract; and that its retention and liquidation of the same is repugnant to and violative of the provisions of the banking act of Georgia. They likewise assert that the status of the Citizens & Southern Bank with reference to the taking over, retention, and liquidation of such property and assets was that of a trustee ex maleficio, and that as such trustee the Citizens & Southern Bank is liable in damages to the Atlanta Trust Company for any and all losses said institution may have sustained in the premises.

We are unable to concur in this view of the case; for we can not agree that the execution of this contract and the exercise of the rights and powers granted by the terms thereof constitutes a voluntary liquidation of the Atlanta Trust Company within the intendment of the banking laws of this State. Our statute with reference to voluntary liquidation of banks is incorporated in our Code, §§ 13-1501 et seq. It is provided that "Any bank may go into voluntary liquidation and be closed, and may surrender its charter and franchise as a corporation to the State by the affirmative vote of its stockholders owning two thirds of its stock," etc. This language clearly negatives the contention that voluntary liquidation of a bank can be effected by a mere failure on its part to conduct the usual and ordinary business incident to the operation of a banking institution. To make such a liquidation effective requires a surrender of its charter and franchise. In other words, there must be not only an intention to cease operation, but also a surrender to the State of all right and authority granted the bank to function as a banking institution. In this connection we seriously doubt if it can properly be said that the Atlanta Trust Company had ceased to function as a banking institution. It is true that it had sold the building in which it was located, and ceased to engage in much of the business that is incident to and

usual in the operations of a bank. It was not accepting deposits or making loans, and it had ceased to engage in the trust business which it had formerly carried on. On the other hand, its obligations to depositors were being paid as their checks were presented, and its bills receivable were being collected. Its debts were likewise being paid and satisfied. It is true that these functions were being performed by another banking institution, but they were done in behalf of and for the benefit of the Atlanta Trust Company. It appears that it was keeping its banking organization intact by the annual election of trustees by the stockholders, and that its stockholders and trustees held meetings and transacted business in its behalf. While plaintiffs allege that the stockholders and trustees met only at infrequent intervals and improperly functioned in the discharge of the duties imposed upon them, it nevertheless appears that such meetings were held and the business of the bank transacted. Certainly such acts clearly show an intention on the part of these officers to continue the Atlanta Trust Company as a banking institution, and negative any contention that they purposed to surrender its charter and franchise as a corporation. Attention is also called to that part of the contract entered into between the Atlanta Trust Company and the Citizens & Southern Bank, which provides that the Citizens & Southern Bank, after having reimbursed itself for the debts and obligations paid and assumed for the Atlanta Trust Company, shall return to that institution all remaining property and assets. This provision in the contract likewise refutes the idea that there was any intention on the part of either of the parties to enter into an arrangement which constituted a voluntary liquidation of the Atlanta Trust Company.

Under the terms of the contract the Citizens & Southern Bank advanced to the Atlanta Trust Company sufficient sums of money to pay off and satisfy all its debts and obligations, except capital stock, surplus, undivided profits, and income. The Atlanta Trust Company sold outright to the Citizens & Southern Bank its office building and certain leasehold interests, the purchase-price of the same being entered as a credit on the amounts advanced by the Citizens & Southern Bank. The Atlanta Trust Company also turned over to the Citizens & Southern Bank all the cash which it had on hand on the date the contract was executed, and this was

likewise entered as a credit on the amounts advanced by the Citizens & Southern Bank. On the balance remaining after said credits were entered, the Citizens & Southern Bank was to receive interest at the rate of six per cent. per annum. To insure payment of this balance the Atlanta Trust Company conveyed to the Citizens & Southern Bank all of its other assets, which the Citizens & Southern Bank was to reduce to cash by collection. From the proceeds thus derived the Citizens & Southern Bank was to reimburse itself for the balance due, with interest, and when so reimbursed all remaining assets were to be returned to the Atlanta Trust Company. Properly construed, this arrangement constituted a loan made by the Citizens & Southern Bank to the Atlanta Trust Company, with the assets conveyed representing security or collateral. The status of the parties under the contract was that of a debtor and creditor and pledgor and pledgee. *Amos* v. *Continental Trust Co.*, 22 *Ga. App.* 348 (95 S. E. 1025); Wyman *v.* Wallace, 201 U. S. 230 (26 Sup. Ct. 495, 50 L. ed. 738); Hightower *v.* American National Bank of Macon, 263 U. S. 351 (44 Sup. Ct. 123, 68 L. ed. 334); Scott *v.* Norton Hardware Co., 54 Fed. (2d) 1047. We quote from the decision of Wyman *v.* Wallace, as follows: "The question therefore is, whether a national bank, finding itself embarrassed, with a large amount of assets, much in excess of its obligations, yet without the cash to make payment of those which are due and urgent, can borrow to meet those pressing demands. A very natural answer is, why not? It is not borrowing money to engage in a new business. It simply exchanges one creditor for others. There may be wisdom in consolidating all its debts into the hands of one person. At least such a consolidation can not be pronounced beyond its powers. When time is obtained by the new indebtedness (in this case a year), it gives the borrowing bank and its officers and stockholders time to consider and determine the wisdom of attempting a further prosecution of business. In the case of an individual it would be a legitimate and often a wise transaction. It is not in terms prohibited by the national banking act."

In Hightower *v.* American National Bank of Macon, supra, the Supreme Court of the United States had under consideration a contract very similar to the contract now under discussion. The court said: "The rational and necessary conclusion from these

provisions is that the moneys advanced were loaned and were to be repaid with interest, that the assets were transferred as security for such repayment, and that the resulting relations between the banks were those of a debtor and creditor and pledgor and pledgee." In the case at bar the directors of the Atlanta Trust Company were authorized to borrow money, and the contract of that institution with the Citizens & Southern Bank was accepted and approved by its directors. It also ratified and affirmed the action of the president of the institution in signing the contract on behalf of the Atlanta Trust Company. It is therefore held that the contract in question is not void for the reasons urged, and that the execution of the same together with the exercise of the rights and powers granted therein does not constitute a voluntary liquidation of a banking institution, as contemplated by the banking law of this State.

As already stated, practically all of the relief prayed for in the amended petition is predicated upon the legal proposition above discussed. There is however, one item specified in both the original and amended petition which may not be dependent on the contention that the plaintiff in error was occupying the status of a trustee ex maleficio with reference to the liquidation of the assets of the Atlanta Trust Company. We refer to the allegation that the Citizens & Southern Bank is not entitled to the profits arising from the trust business of the Atlanta Trust Company. In the original petition it was alleged that these profits approximated the sum of thirty-five thousand dollars. In the amendment it was asserted that these profits had increased since the filing of the petition, and that they approximated seventy-five thousand dollars. A study of the contract entered into between the Atlanta Trust Company and the Citizens & Southern Bank leaves this question a matter of doubt. However, the amendment shows that after the original petition was filed by King, making this contention, at a meeting of the trustees of the Atlanta Trust Company held on May 19, 1933, a resolution was passed approving and accepting a contract entered into between the Atlanta Trust Company, the Citizens & Southern National Bank, and other banking institutions named as parties defendant in the petition. This contract stipulated that the trustees were not in accord with the contention of King relatively to the trust business of the Atlanta Trust Com-

pany, and recited that it was the true intention of the parties to the contract of December 3, 1929, that the Citizens & Southern Bank should receive the profits arising from such trust business. This contract expressly repudiated the contention of King both as to the construction of the contract of December 3, 1929, with reference to the profits of said trust business and to the amount due to the Citizens & Southern Bank at the time the original petition was filed by him. In the contract of May 19, 1933, the right of the Citizens & Southern Bank to said profits was confirmed, and the same were conveyed and assigned to said institution. This action on the part of the trustees of the Atlanta Trust Company finally and effectually disposed of any contention as to the profits arising from the operation of the trust business of the Atlanta Trust Company, and bars and estops the plaintiffs from seeking an accounting from the Citizens & Southern Bank with reference thereto. It must be borne in mind that this action was necessarily brought in behalf of the Atlanta Trust Company, and the right to prosecute the action must exist in this institution. How, then, it would be possible to maintain an action in behalf of a party who expressly repudiates any right to prosecute the same does not clearly appear. The defendants in error contend that the action of the trustees on May 19, 1933, with reference to the matter under consideration, was ineffective for any purpose, by reason of the fact that the contract entered into on that date was executed after the filing of the original petition. It is urged that this amounts to a change in the status of the property involved in the litigation. There is no merit in this contention, as the only purpose of the action of the trustees was to clarify the terms of the original contract entered into between the parties. The object of judicial investigations is the ascertainment of the truth; and certainly the parties to a contract, the terms of which are ambiguous, or which does not express the true intention of the parties, can at any time clarify and reform such instrument by mutual consent. This is true regardless of any action that may be pending either in law or equity with reference to the subject-matter of the contract.

In the light of what is here said it must be held that the petition as amended did not set out a cause of action against the plaintiff in error, and that the judge erred in overruling this ground of the demurrer. It is not necessary to consider the other grounds of demurrer.

*Judgment reversed. Beck, P. J., and Bell, Knox, and Worrill, JJ., concur. Russell, C. J., and Hutcheson, J., dissent.*

BELL, Justice, concurring specially. Whether or not the contract assailed in the petition was valid, as held by the majority, and assuming that the petition and the amendment each stated a cause of action, it is my opinion that the amendment was improper and should have been stricken, for the reason that the plaintiffs attempted thereby to abandon the cause of action, if any, as stated in the original petition, and to substitute a new and distinct cause of action, which was not permissible under the law. Accordingly I concur in the judgment of reversal.

RUSSELL, Chief Justice, dissenting. The petition was not assailed by special demurrer for structural defects. It was only attacked by general demurrers. These the learned trial judge overruled, and the exception here is to that judgment. I can not concur in the opinion of the majority that the judge erred in overruling these demurrers, for under his ruling all issues of fact, if any, or disputes between the parties in this case, would properly be submitted to a jury, who are the best doctors of doubtful subjects, as more than once was said by Chief Justice Bleckley. I fail to perceive how, under the allegations and prayers of the petition, the court could have refused an accounting to these undisputed stockholders in the Atlanta Trust Company, which may be described, in language neither technical nor legal, as being at this time a defunct corporation. I do not believe that stockholders who have invested their money in a bank, and are deprived of it by illegal contracts entered into without their knowledge or consent by their superior officers, should be denied the poor privilege of being told what became of their money. For this reason I shall state at the outset that the learned judge, in my opinion, ruled correctly in overruling the general demurrers; for the principle has often been stated, that if a petition is good for only one of its prayers, the entire petition should not be dismissed. It is my opinion that the contract of December 3, 1929, was ultra vires so far as the Atlanta Trust Company was concerned, and is absolutely void. If it constituted an assignment by the directors of that company, and they had the power without any say so on the part of the stockholders to assign all of its property, it may be said to have been a voluntary assignment. To me it is im-

material whether the assignment was voluntary or involuntary, because there is a statement in the petition indicating that coercion was used in securing the action of the directors. Pertinent sections of the Code have been cited in the majority opinion, which obviates any necessity for repeating them. However, it is my humble opinion that the fact that the directors or trustees entered into an illegal and void contract whereby they effectually put the Atlanta Trust Company out of business is far more important than the surrender of the charter and franchise referred to in the statute. It is a well-settled principle that the law does not require the doing of a vain thing. Our reports are full of that statement; and what a travesty it would be, no matter how great the formalities and functions surrounding the delivery of the charter, to return to the corporators a charter and franchise which was absolutely void. As I understand the banking law of Georgia, when the officers of the trust company were reduced to such straits as set forth in the allegations of the petition, admitted to be true by the Citizens and Southern Bank on demurrer, it was the duty of the directors to go first to the superintendent of banks of this State and inform him that they could not meet their obligations, and put all of their property immediately in his hands. So far as I know, there is no provision of law in Georgia that recognizes an assignment by a bank for the benefit of its creditors. Whether you call the transaction one of loan and borrowing, and whether you call it one of bargain and sale, makes no difference, because, regardless of a difference in purpose perhaps, they both amount to an attempted assignment by unauthorized officers, without the consent of the stockholder, of everything of value constituting the assets of the trust company, with the provision, it is true, that the bank should from these assets pay the creditors. In this latter respect it does not differ from assignments for the benefit of creditors, which in former years were much used and very popular among all classes of mercantile business.