## CITY OF ALBANY *et al. v.* LIPPITT.

No. 13622.   MARCH 12, 1941.   REHEARING DENIED MARCH 29, 1941.

*Bennet & Peacock* and *A. N. Durden,* for plaintiffs in error.

*S. B. Lippitt,* contra.

DUCKWORTH, Justice. ■ The sufficiency of the petition is challenged by the demurrer on the grounds that no cause of action is alleged, that it contains no equity, and that petitioner has an adequate remedy at law. The demurrer admits all properly pleaded allegations in the petition, and they must be considered as true in passing upon the demurrer. Code, § 81-304; *Citizens & Southern National Bank* v. *King,* 184 *Ga.* 238 (190 S. E. 857); *Baldwin* v. *Dawson,* 41 *Ga. App.* 90 (2) (151 S. E. 825). The petition shows that the plaintiff is the sole and exclusive owner of the grass plot between the sidewalk and the curbing and of the trees growing thereon which constitute the basis of this controversy. It shows further that the defendant city and its named officials without authority of law have already invaded the plaintiff's rights to the free use and full enjoyment of this property, and have threatened a continuation of such unlawful invasion, which has and will deprive petitioner of his right to improve and beautify this prop-

erty belonging to him. These pleaded facts constitute a cause of action, and are sufficient to withstand the first ground of the demurrer.

The remaining two grounds of the demurrer are of the same nature, and in substance they deny that a court of equity has jurisdiction of the case. These assaults upon the petition make it necessary to decide whether the present action is an attempt to enjoin a criminal prosecution, in violation of the general rule that equity will not enjoin a criminal prosecution. Code, § 55-102; *Corley v. Atlanta,* 181 *Ga.* 381 (182 S. E. 177); *Powell* v. *Hartsfield,* 190 *Ga.* 839 (11 S. E. 2d, 33); *Anthony* v. *Atlanta,* 190 *Ga.* 841 (11 S. E. 2d, 197); *Spur Distributing Co.* v. *Americus,* 190 *Ga.* 842 (11 S. E. 2d, 30); *Ray* v. *Dalton,* 191 *Ga.* 46 (11 S. E. 2d, 193); Beal *v.* Missouri Pacific R. Cor., U. S. ( Sup. Ct. , 85 L. ed. 380). Or whether the injunction is sought primarily for the purpose of preventing injury to property and to property rights. *Great Atlantic & Pacific Tea Co.* v. *Columbus,* 189 *Ga.* 458 (6 S. E. 2d, 320). The rule that equity will not enjoin a criminal prosecution is not new in this State, and is not the result of recent construction but rather is of long standing and represents the original unanimous opinion of this court, as shown by citations in the cases above cited. These original decisions on this question have been at all times thereafter and are now binding upon this court. It has, however, been a source of constant confusion and uncertainty, and has given the bar generally considerable difficulty in properly classifying the cases that come under this rule. In the hope of making the rule more readily understandable, we will state it in different language. In every case where the pleaded facts show that the primary injury complained of is the criminal prosecution, although property rights are incidentally involved, there is an adequate remedy at law by making a defense on the trial of the criminal case, and equity has no jurisdiction. If, however, the pleaded facts show that the primary injury of which complaint is made is to property and property rights, although criminal prosecutions may be incidentally involved, and there is no adequate remedy at law, equity has jurisdiction. The criminal prosecution if against the petitioner neither adds to nor subtracts from his right to maintain a suit in equity. The present petition shows no criminal prosecution against the petitioner. Hence the primary

injury to petitioner manifestly is not a criminal prosecution. Consequently the general rule above stated does not bar this petition. In paragraph 19 of the amendment it is asserted that the defendants have threatened to institute criminal prosecutions against any agent or employee of petitioner who attempts to cut and remove the trees which he asserts are on the private property of petitioner; and it is alleged that such threats have prevented him from engaging the services of employees for the purpose of improving his private property. Obviously it is not within his power to control the choice of potential employees, and they are free to refuse to accept employment because of fear created by defendants' threats. Thus it clearly appears that he is injured by defendants' threats, and that he has no remedy at law, and consequently is entitled to equitable relief. The case is controlled by the decision in *Great Atlantic & Pacific Tea Co.* v. *Columbus,* supra. The petition is not subject to the demurrer, and the judgment overruling the same is not erroneous.

■ When our inquiry proceeds beyond the allegations of the petition to encompass the evidence a different case is found. Whereas the petition asserts that the City of Albany has no deed to Third Street or Avenue, and is silent as to a dedication, and states a case of ownership in fee simple, the undisputed evidence shows a written dedication of this street of a uniform width of 80 feet to the City of Albany for public use and travel, and a written acceptance of such dedication by the city, thus showing that petitioner's ownership is limited by the public servitude. The evidence shows that within the bounds of the 80 feet so dedicated are paved streets for vehicular travel and paved sidewalks for pedestrian travel, and that between these pavements is an area approximately 18 feet in width on which is planted grass and shade-trees, and it is this grass plot and the trees thereon which the petition claims as the private property of the petitioner in which the city has no rights whatever. The evidence demolishes essential portions of the petition. When the dedication was made in 1913, nothing further remained to be done to entitle the city to all rights conferred by the dedication to the entire width of 80 feet as described in the dedication. *Ellis* v. *Hazlehurst,* 138 *Ga.* 181 (5) (75 S. E. 99); *Lastinger* v. *Adel,* 142 *Ga.* 321 (2) (82 S. E. 884). There is nothing in *Kelsoe* v. *Oglethorpe,* 120 *Ga.* 951 (48 S. E. 366, 102 Am.

St. R. 138), that conflicts with this ruling. That decision was made upon facts different from those in the present case. There no express acceptance of the dedication was shown, and one of the questions was whether the development and use of one end of a dedicated street would show an acceptance of the dedication; and this court answered that question in the negative. That judgment is grounded mainly upon the ruling that by a nonuser for a period of forty years the public authorities had abandoned the street, even if there had been an acceptance of the dedication. In the opinion reference was made to *Norrell* v. *Augusta Railway & Electric Co.,* 116 *Ga.* 313 (42 S. E. 466, 59 L. R. A. 101), where it was held, that, where the public authorities had accepted and used a portion longitudinally of a dedicated street, adverse possession of the unused portion by a private individual could not ripen into prescriptive title. In the present case the acceptance of the dedication being express, no evidence of use is required to establish the fact of its acceptance. The area of the easement is established by the description in the accepted dedication. The case of *Donalson* v. *Georgia Power & Light Co.,* 175 *Ga.* 462 (6) (165 S. E. 440), differs on its facts from the present case. There no express acceptance of the offer to dedicate was shown. The city attempted to give the company a right to place its transmission lines upon the land embraced in the offer to dedicate prior to acceptance by use of any portion of the right of way described in the dedication.

The next question requiring an answer in the solution of this case is whether or not the city is authorized by the dedication to maintain the trees in question. Indeed this is the main question in the case. Thus far the travelled portions have not extended to the full width of the right of way. Until the remainder is required for that purpose, is the city authorized by the dedication to devote it to other serviceable uses incidental to and in furtherance of the public use for travel? "Property dedicated to a public use may by the dedicatee be put to all customary uses within the definition of the use." *Brown* v. *East Point,* 148 *Ga.* 85 (3) (95 S. E. 962). To the same effect see *Donalson* v. *Georgia Power & Light Co.,* supra. Here we have a street dedicated to the "free use and passage of the public." "Streets, however, may be used for many purposes other than that of travel, such as the construction of sewers and drains, the laying of gas and water pipes, the

erection of telegraph and telephone wires, and a variety of other improvements, beneath, upon, and above the surface, to which in modern times they have been subjected." 25 Am. Jur. 462, § 167. In Sweet v. Perkins, 115 App. Div. 784 (101 N. Y. Supp. 163, 19 Words & Phrases 450), the court, after recognizing that as to highways the public has only the right of passage with the powers and privileges incident to that right, and that the owner of the soil retains the exclusive right in mines, quarries, springs of water, timber, and earth, for every purpose not incompatible with the public right of way, states that these rules must be taken with some limitation as to the streets of a city or large village; that there are certain uses, such as the construction of sewers and the laying of gas and water pipes, to which the latter are generally applied; and that these uses, which are called "urban servitudes," are the necessary incidents of streets in large cities, and are paramount to the rights of the owner of the fee. It must follow therefore that such uses are customary and come within the definition of a street in a city. A dedication of land to the public use as a street not only embraces all of the customary uses to which streets are devoted at the time of the dedication, but will expand to take in all new uses that become customary as civilization advances.

In Cater v. Northwestern Telephone Exchange Co., 60 Minn. 539 (63 N. W. 111, 28 L. R. A. 310, 51 Am. St. R. 543), it was said: "If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and, next, a way for vehicles drawn by animals,—constituting, respectively, the iter, the actus, and the via of the Romans. And thus the methods of using public highways expanded with the growth of civilization, until to-day our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owner of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general

purpose for which highways are designed." If these incidental or customary street uses are to be denied the public, the authority for such denial must be stated in the dedication, and in the absence of any limitation upon the public use it will be construed to authorize any and all incidental and customary uses to which streets are devoted. If a street is sufficiently wide that enough will remain unobstructed to meet the needs of public travel, the municipality has a right to devote the sides or other portions thereof to useful purposes other than travel. It may maintain park strips between the paved street and the sidewalk, in which grass, flowers, and trees may be grown for the purpose of beautifying and ornamenting the streets of the city and contributing to the comfort and pleasure of its citizens. 25 Am. Jur. 385, § 72, and cases cited in the notes. The trees in the present case may be retained by the city because of their contribution to the comfort of the travelers on the street by shielding them from the sun and for their æsthetic value. They prevent the street from being a mere scar across a tract of land. The plan of the City of Albany for Third Avenue or Street is manifestly designed to afford these benefits to the public. The plan is not rendered inconsistent with the purpose for which the street was dedicated by the fact that interwoven with such useful considerations are æsthetic ones. It has been said that beauty may not be queen. But she is not an outcast beyond the pale of protection and respect. She is entitled to at least shelter herself under the wing of comfort, safety and security. It is needless for this decision to delimit the sphere of her influence; for, as stated, the trees in addition to their beauty contribute to the comfort of the traveling public.

The maintenance and preservation of the shade-trees here involved come within the customary use incidental to public streets, and the right to maintain them was conferred upon the City of Albany by the written dedication. The petitioner as the abutting owner asserts the right to remove the trees in question, without the consent and against the will of the city. The court sustained this contention and granted the injunction which is excepted to. While the record shows that the petitioner's purpose in seeking to remove the shade-trees was not malicious but rather that other shrubbery which was more expensive might be put in the place of the trees so removed, yet the question here can not be decided

on the basis of his motive, but must stand upon the legal rights of the respective parties. It is strongly urged in the briefs before this court that the petitioner's right to cut and remove the trees is supported by the following decisions: *City of Atlanta* v. *Holliday,* 96 *Ga.* 546 (23 S. E. 509); *Long* v. *Faulkner,* 151 *Ga.* 837 (108 S. E. 370); *Mozley* v. *Marietta,* 180 *Ga.* 590 (180 S. E. 122); *City of Marietta* v. *Mozley,* 183 *Ga.* 875 (190 S. E. 34); *Baldwin* v. *Dawson,* 41 *Ga. App.* 90 (151 S. E. 825). These decisions are authority for the proposition that the petitioner as the abutting owner is presumed to own the fee to the center of the street; that title to the fruit grown upon the trees in this area is in him; and that the city can not arbitrarily and without his consent cut and remove the trees. Nothing ruled in either decision can be construed to constitute authority for petitioner to cut and remove such trees. In fact all of these decisions clearly recognize the right of the city to exercise a sound discretion on the question of removing the trees; and that if they are removed in the exercise of such discretion, courts are without authority to control such action. But the present case does not involve the right of the city to cut the trees or to take the fruit grown thereon. It involves the right of the city to retain the trees for a use and purpose embraced in the purpose for which dedication was made. While the petitioner as the abutting owner has the right to use the property for all purposes not incompatible with the public use, yet this right of private use, in case of conflict, must yield to the superior servitude to which the property has been dedicated. By the instrument of dedication the petitioner's grantors gave to the city a right in the property described, entitling it to the use here complained of. Since this use was given to the public, it necessarily follows that there is not a taking of private property inhibited by the constitution. Code, § 2-301. If it be said that the street could be used for public travel without these trees, it may also be said that it could be used for that purpose without lights, sewerage, paving, and other incidental and customary uses referred to in this opinion. If the city is allowed to pave the surface, this is justified because of the contribution thus made to the comfort of the traveling public; and while the comfort derived from the shade-trees is of a different kind, it is comfort nevertheless, and stands upon the same basis of justifiable use as that of paving. But the

petitioner urges most strongly his right as the owner of the fee to use the property for any purpose that does not interfere with public travel on the right of way. He has placed in this record as evidence photographs of the premises which show a fire hydrant located upon the same grass plot where the trees are grown. To sustain his argument would authorize him to remove this hydrant, since its removal would not interfere with the public travel. As the owner of the fee he does not have such a right, for the right to maintain that hydrant was conferred upon the city by the instrument dedicating the right of way. But, even if his argument were sound, it would not sustain his right to remove the trees; for their removal would interfere with the right of the traveling public by depriving them of the comfort afforded by the trees.

Sections 399 and 510 of the city code were not repealed by the new charter of the City of Albany, but on the contrary they were expressly preserved by that act and also by a subsequent city ordinance, and they are now in force. The petition further attacks these provisions of the city code, upon the ground that as applied in this case they offend the due-process and equal-protection clauses of the Federal constitution (Code, § 1-815), the due-process clause of the State constitution (Code, § 2-103), and the inhibition against taking private property for public purposes without compensation in the State constitution (Code, § 2-301). For the reasons stated in this opinion these constitutional attacks are without merit. Upon the evidence produced upon the hearing it was error to grant the injunction.    *Judgment reversed. All the Justices concur.*

ATKINSON, Presiding Justice, concurring specially. The first headnote and corresponding division of the opinion reach the proper result, but contain statements that are not entirely accurate. Where criminal prosecutions interfere with substantial property rights, equity may intervene by injunction to prevent such interference. The second division of the opinion is illuminating and convincing, and together with the second headnote correctly states principles of law properly adjusted to the case.