## YATES *v.* THE STATE.

1. Where upon a trial for murder the evidence disclosed that the accused killed the deceased while he, as a town marshal, was attempting to arrest him for a past violation of a municipal ordinance, it was not erroneous to refuse to allow the defendant to prove by a witness that, on the day of the homicide, he was told by the marshal that the accused was to come to town that day to stand his trial for violating the town ordinance, and that this was understood between him and the accused.

2. A ground of a motion for a new trial which assigns error upon the admission of merely designated documentary evidence, without disclosing the contents of the writing admitted, can not be considered.

3. When upon the trial of a case of the character indicated in the first headnote it appeared that, at the time of the homicide, the marshal, accompanied by a posse, attempted to arrest the accused, without a warrant, evidence that the accused had violated an ordinance of the town wherein such attempt to arrest was made, "in the presence of the deceased on [a named date], about four months before the killing, and that [the accused] was armed with a gun and resisted arrest," was not "irrelevant and immaterial."

4. Where the question under examination, and to be decided by the jury, is one of opinion, an expert witness may give his opinion thereon, based on facts which he himself knows and has observed.

5. As a general rule, a municipal peace officer in whose presence a town ordinance has been violated has no lawful authority, without a warrant, to arrest the offender, when he has had ample time and opportunity since the commission of the offense to procure a warrant.

Submitted November 19, 1906.—Decided March 1, 1907.

Conviction of manslaughter.    Before Judge Spence.    Decatur superior court.  June 27, 1906.

*Crawford & Ricketson, R. R. Terrell,* and *R. G. Hartsfield,* for plaintiff in error.

*W. E. Wooten, solicitor-general,* and *I. J. Hofmayer,* contra.

COBB, P. J.   Yates was tried under an indictment charging him with the murder of Freeman, and was convicted of voluntary manslaughter.   It appeared, from the evidence, that Freeman was the town marshal of Donalsonville, and that the homicide occurred while he, with two other persons whom he asked to accompany him, was attempting, without a warrant, to arrest the accused for a violation of a town ordinance committed in his presence some months before.   The accused made a motion for a new trial, which was refused, and he excepted.

1. Error was assigned in the motion because the court refused to permit the accused to prove by a named State's witness that the deceased, on the day of the homicide, told him "that Jim Yates was to come to town that day to stand his trial on the charge of violating the town ordinance, for which the deceased . . was seeking to arrest him, at the time said Freeman was killed, and deceased told witness that it was understood between the defendant, Jim Yates, and the deceased that Yates was to come to town and stand his trial that day."   As stated by counsel for plaintiff in error in their brief, "the evidence showed that about four months prior to the killing the defendant had violated an ordinance of the town of Donalsonville, and had been staying at his home in the country to avoid arrest."   Suppose it was understood between Yates and the town marshal that Yates was to come to town on the day that the homicide occurred, and stand his trial, this was no reason for his not submitting to arrest when he did come into the town for this purpose.   It was rather a reason why he should do so.   Nor was such an understanding any reason why the marshal should not attempt to arrest him when he came within the town limits.   The marshal might well think that it was his

duty to arrest, at the first opportunity, a man who, after a violation of a town ordinance, had been avoiding arrest for four months, even though such opportunity presented itself by reason of an understanding between them that the violator of the municipal ordinance would come to town upon a certain day for the purpose of being tried for the offense. There was no offer to prove that the marshal had promised not to arrest the accused, if he would come to town on this particular day for the purpose of standing his trial. The accused had never been arrested for his violation of the municipal ordinance, and was under no bond for his appearance to be tried for its violation. He had been avoiding arrest for four months. What assurance did the marshal have that the accused, if allowed to come and go as he pleased in the town, would in due time present himself before the municipal court for trial? His past conduct, already in evidence when the question here presented was made, in walking the streets, armed with a gun and defying arrest for the offense with which he was charged, and remaining away from his place of business in the town for several months, in order to avoid arrest, was not such as to justify the marshal in taking any chances in this respect; and the fact, which also then appeared in evidence, that when he came to town on the day of the homicide he came armed with a double-barrel shot gun, was not calculated to assure the marshal that the accused had simply come to town to stand his trial. The court was right in holding that this testimony was irrelevant. Besides, we do not see how the accused could have been hurt by the rejection of testimony the tendency of which was to show that at the time he slew the marshal he must have known that the latter was simply trying to arrest him for a municipal offense.

2. Error was assigned on the admission in evidence of "the criminal docket of the town of Donalsonville, and certain entries therein on pages 24 and 25, identified as made in the handwriting of the deceased." Error was also assigned upon the admission of "what purported to be a certified copy of sections 78 and 91 of the Code of Donalsonville." Neither of these assignments of error was well taken, because it did not appear in the motion what the docket entries were, nor what the code sections contained. So the motion in each instance failed to disclose what the evidence was which was admitted over the objection of the accused.

3. Evidence "that Jim Yates [the accused] had violated a
town ordinance of Donalsonville in the presence of the deceased
on the 29th day of October, 1900, about four months before the
killing, and that Jim Yates was armed with a gun and resisted
arrest," was not "irrelevant and immaterial," and the court did
not, as alleged, err in admitting it.    It tended to sustain the
theory of the State that the deceased, at the time he was killed,
as the marshal of Donalsonville, was simply trying to arrest the
accused for a previous violation of a town ordinance, and also to
explain why he was accompanied by the other persons who par-
ticipated in the attempt to arrest.    It not only tended to illus-
trate the motive with which the deceased acted at the time he
was killed, but also the motive of the accused when he killed him.
The accused was on trial for the offense of murder, and malice
is an essential ingredient in this crime, and any circumstance
from which the jury could lawfully infer that the defendant en-
tertained malice toward the marshal and, actuated by this feeling,
slew him, in a spirit of revenge, and not simply to prevent the
marshal from unlawfully arresting him, was admissible.    If the
accused had previously violated a town ordinance, in the presence
of the marshal, and the marshal had then attempted to arrest
him for such offense, and the accused had resisted arrest, with a
deadly weapon, these facts tended, in some measure, to indicate
the mental attitude of the accused in reference to being arrested
by this same officer and for this same offense.    They tended to
indicate that his mind, relative to being arrested by this particu-
lar officer and for this particular offense, was not prepared to dis-
criminate between a lawful arrest and an unlawful one, and that
his mental attitude as to this matter was that he would resist
either with deadly violence.    The jury were to determine whether
the accused slew the marshal in a spirit of malice, in which event
he would be guilty of murder, or whether he did so in a heat of
passion caused by an unlawful attempt of the deceased to arrest
him, in which case he would be guilty of voluntary manslaughter,
or whether the homicide was committed in self-defense.    We think
the testimony objected to disclosed circumstances which were rele-
vant to the issues arising in the case.

4. Error was assigned in the motion for a new trial because the
court allowed a State's witness "to testify as a physician and an

expert," as to the sanity of the accused at the time of the homicide, from his own personal observation of him for a period of six years, during which he came into almost daily contact with him and frequently engaged him in conversation. The objection made to this testimony was, "that as an expert the witness should testify from hypothetical questions asked him by counsel, and not from his own knowledge and observation." This objection was without merit. Even a non-expert witness may give his opinion as to the sanity of a person, based upon personal acquaintance and conversations with such person, after giving the facts upon which he predicates such opinion. *Potts* v. *House,* 6 *Ga.* 324; *Foster* v. *Brooks,* Ib. 293; *Walker* v. *Walker,* 14 *Ga.* 242; *Taylor* v. *State,* 83 *Ga.* 647; *Herndon* v. *State,* 111 *Ga.* 178; *Maxwell* v. *Harris,* 8 *Ga.* 67; *Bryan* v. *Walton,* 20 *Ga.* 480; *Goodwyn* v. *Goodwyn,* Ib. 600; *Choice* v. *State,* 31 *Ga.* 466; *Graham* v. *State,* 102 *Ga.* 654. Both the Civil and the Penal Code declare that, "Where the question under examination, and to be decided by the jury, is one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor." Civil Code, § 5285; Penal Code, § 1021. "The opinions of experts on any question of science, skill, trade, or like questions, are always admissible; and such opinions may be given on the facts as proved by other witnesses." Penal Code, § 1022; Civil Code, § 5287. When a scientific expert has observed none of the facts, he may give his opinion on a hypothetical case similar to that before the jury. *Griggs* v. *State,* 59 *Ga.* 738. But when he has observed the facts, he may give his opinion based on his own observation. *Potts* v. *House,* supra.

4. Error was assigned because the court instructed the jury that if they believed from the evidence that, on a prior occasion, the accused had, in the presence of the deceased, who was the town marshal of Donalsonville, violated an ordinance of that town, "then the officer would have a right under the law to arrest him without a warrant, and if he was attempting to arrest him for a violation of a town ordinance, which had been committed in his presence, that would be a legal arrest, and the defendant would have no right to resist the officer in making the arrest; and if he did so, and in doing so took the life of the deceased, in order to prevent a legal arrest, then it would not be man-

slaughter, it would be murder." The distinction which has come down to us from the common law between arrests, without a warrant, for felonies, and such arrests for minor offenses, has been fully discussed and clearly pointed out by Mr. Justice Evans in *Porter* v. *State,* 124 *Ga.* 297, and need not be further discussed here.

We are here dealing with the question of the authority of a municipal peace officer to arrest, without a warrant, for a mere municipal offense, which, though committed in his presence, was perpetrated months before the attempt to arrest was made. It was held, by the majority of the court, in the case cited, that section 896 of our Penal Code is applicable to municipal peace officers, such as policemen or town marshals. That section reads as follows: "An arrest may be made for a crime by an officer, either under a warrant, or without a warant, if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." As stated by Mr. Justice Evans, in the majority opinion in the *Porter* case, "Section 896 of our Penal Code is a codification of the common law on the subject of arrest, with perhaps a slight enlargement of the power of arrest." "Though at common law an officer might without a warrant arrest for a breach of the peace committed in his view, the arrest must have been made at the time of, or within a reasonable time after, the commission of the offense,—that is, the officer must immediately set about the arrest, and follow up the effort until the arrest is made. There must be a continued pursuit and no cessation of acts tending toward the arrest from the time of the commission of the offense until the apprehension of the offender. Any delay for purposes foreign to the arrest will make the officer a trespasser." Voorhees on Arrest, §141; Hawley, Law of Arrest, 39; Regina v. Walker, 25 Eng. Law & Eq. R. 589; Clifford v. Brandon, 2 Campb. 358; Cook v. Nethercote, 6 C. & P. 741; Coupey v. Henley, 2 Esp. 540; Taylor v. Strong, 3 Wend. 385; Wahl v. Walton, 30 Minn. 506. A statute of Minnesota provided that a peace officer might, without a warrant, arrest a person under prescribed conditions, set forth in subdivisions of the statute, the first of which provided that the officer might so arrest "for a public offense committed or attempted in his pres-

ence." In Wahl v. Walton, supra, Gilfillan, C. J., after stating that, "At the common law, a constable might, without a warrant, arrest for a breach of the peace committed in his view" (for which he cited 4 Bl. Com. 292), and that "it was well settled that in case of an offense not a felony, the arrest must have been made at the time of, or within a reasonable time after, its commission," and citing English authorities, said: "The statute seems to be a re-enactment of the common law rule, with this change, that the first subdivision enlarges the class of cases in which a peace officer may arrest where the offense is committed in his presence, so that such arrest may be made for any public offense,—felony or mis-demeanor,—though not amounting to a breach of the peace. But there is no reason to suppose that it was intended to change in any other respect the conditions upon which the arrest may be made." He further said: "When it is said that the arrest must be made at the time or immediately after the offense, reference is had, not merely to time, but rather to sequence of events. The officer may not be able, at the exact time, to make the arrest; he may be opposed by friends of the offender; may find it necessary to procure assistance; considerable time may be employed in the pursuit. The officer must at once set about the arrest, and follow up the effort until the arrest is effected. . . In this case, some five hours having elapsed between what occurred at noon and the arrest, during which the defendant [arresting officer] was not about anything connected with the arrest, the court was right in its instruction that there was no authority to arrest for that occurrence." In Meyer v. Clark, 41 N. Y. Super. Ct. Rep. 107, it was held: "When a policeman, after having seen a breach of the peace or a misdemeanor committed, departs, and afterwards returns, he can not arrest without a warrant for such previous offense so committed in his view;" and that the shortness of the interval does not affect the question. In Regina v. Walker, supra, some two hours had elapsed after the commission of the offense before the arrest was made, and it was held that the authority to arrest was lost, because there was no continued pursuit. In the case with which we are dealing, about four months had elapsed from the time the offense was committed in the presence of the town marshal until he, without a warrant, made this attempt to

arrest the offender. So there can be no doubt that he was illegally attempting to arrest the accused.

For one whom an officer attempts to illegally arrest to kill such officer, while making such attempt, not in malice, nor in self-defense against an apparent effort of such officer to take his life or to commit a felonious assault upon him, but simply to prevent the arrest, is voluntary manslaughter. *Porter* v. *State,* supra; *Williford* v. *State,* 121 *Ga.* 173; Whar. Homicide, §225-271; Cryer *v.* State, 71 Miss. 467; Reg. *v.* Chapman, 12 Cox's Crim. Cas. 4; Briggs *v.* Com., 82 Va. 554; Rafferty *v.* State, 69 Ill. 111, s. c. 72 Ill. 37; Rex *v.* Patience, 7 Carr. & Payne, 775; 1 Whar. Crim. L. (10th ed.), §414; Com. *v.* Carey, 12 Cush. (Mass.), 246; Rofts *v.* State, 14 Mo. 138. While the jury found the accused guilty of voluntary manslaughter, and the evidence for the State was very strong, and, notwithstanding the unlawfulness of the attempted arrest, abundantly supported the verdict, and but for this feature of the case would have demanded a verdict of murder, yet we can not say that the error of the court which we have just been considering does not require the grant of a new trial. For the accused pleaded self-defense, and his own statement and the testimony of his brother, corroborated to some extent by the testimony of other witnesses, if credited by the jury, would have supported such defense; and he was entitled to have the unlawfulness of the arrest sought to be made considered in connection with the evidence and statement as applied to this defense. He had a right to reasonably resist an attempt to unlawfully arrest him; he had no right to offer any resistance whatever to a lawful effort to arrest him. The effect of the court's charge, as applied to the evidence, was that the officer had the right to make the arrest, and the accused had no right to resist, thus putting the officer in the right and the accused in the wrong at the very inception of the fatal rencounter between them. The charge eliminated from the case, and withdrew from the consideration of the jury, the fact that the deceased, and not the accused, was the aggressor in the beginning of the occurrence between them which resulted in the deplorable tragedy, and placed the accused, even then, in an attitude of open defiance to the law; and this, we think, had a tendency to prejudice his defense in the estimation of the jury. Besides, the evidence showed that at the

time the attempt to arrest was made the accused was armed with a double-barrel shotgun; and, in view of this circumstance, the jury, believing, from the instructions of the court, that the marshal had the right to make the arrest, might have thought that when he found the accused, thus armed, disposed to resist the effort to take him into custody, the marshal and the members of his posse had the right to intimidate him into submission by apparently threatening him with death or great bodily harm, if he resisted.

As a new trial must be granted for the reasons above indicated, it is unnecessary to deal with the grounds of the motion for a new trial, in reference to the overruling of defendant's motion for a continuance, holding a certain juror to be competent under his answers to the statutory questions, and allowing the State to reopen the case and reintroduce a named witness after both sides had closed.

*Judgment reversed.. All the Justices concur, except Fish, C. J., absent.*