## 5322.  HARRIS *v.* THE STATE.

RUSSELL, C. J.  1. The act approved August 12, 1910 (Ga. Laws, 1910, p. 134), which prohibits any person from having or carrying a pistol without first obtaining a license, should receive a reasonable construction in accord with the legislative purpose in enacting it.

2. It would be unreasonable to suppose that the legislature ever intended to prohibit the use of a pistol, where its use is really necessary, by one who knows, or has good and ample reason to apprehend, that an act of adultery is impending or actually in progress between his wife and a despoiler of his home (or to prohibit a person's use of a pistol in any similar case where the use of a pistol as a weapon of defense may be necessary and thus by law justifiable), by requiring such a one to wait until he can go to the ordinary's office of the county of his residence and obtain a license, before he is permitted to use a pistol for the protection of his family, or to prevent an adultery with his wife, or even to take a pistol into his manual possession.

3. When, in a sudden emergency, the use of a pistol is absolutely necessary for the defense of one's person, his family, or his property, the temporary manual possession of a pistol for the purpose of defense, or the defense of one's family or property, and the momentary carrying of the pistol on that occasion, and for that purpose only, is not unlawful.

4. The court erred in excluding testimony as complained of in the motion for a new trial, and in refusing to charge the jury as requested; and a new trial should have been granted.

*Judgment reversed.  Pottle, J., dissents.*

DECIDED JANUARY 20, 1914.

Indictment for carrying pistol; from Laurens superior court—Judge Hawkins. September 20, 1913.

*R. Earl Camp,* for plaintiff in error.

*E. L. Stephens, solicitor-general,* contra.

*RUSSELL, C. J.  The writ of error in the present case challenges the correctness of the lower court's rulings in excluding certain testimony tending to show the existence of an emergency which might justify the immediate use of a pistol by the defendant, and in refusing to charge that if the jury believed, from the evidence, that the defendant took the pistol from the place where it was lawfully located, for the immediate and sole purpose of its use to prevent a person from consummating an act of sexual intercourse with his wife, which he knew to be in progress or about to be consummated, the jury could not convict him.  The trial judge restricted the defense of the accused literally to the procurement of the license required by law, and charged the jury that if they found he had a

---

*This opinion was not filed in time for publication with decisions of the same term in the preceding volume of reports.

pistol in his manual possession at a place other than his home or place of business, the burden was upon him to show that he had complied with the law by registering and giving bond and procuring a license, and that upon failure of such proof he should be convicted. The judge excluded all testimony tending to show that the only purpose for which the defendant obtained the pistol, or carried it, was to prevent the consummation of an act of adultery with his wife, although the defendant, in his statement at the trial, asserted that this was the case. According to the defendant's statement, he was searching for his wife at night; he inquired at a house where he suspected her to be in company with one Will Reece; some of the occupants of the house informed him that his wife was not there, but about that time he recognized her voice in a rear room of the house, and also detected a man's voice in the same location. He ran as quickly as possible to a house near by and procured the pistol, and, crossing the street to the house where he suspected his wife to be, shoved open the door and discovered her in bed with her paramour, Will Reece, whom he shot.

The judge's rulings upon the evidence, and his instructions to the jury, even under the circumstances narrated by the defendant, excluded any possibility of a defense, because the defendant admitted that he had not registered or procured the statutory license which is required to legalize the carrying of a pistol. The question presented, therefore, is whether there are any circumstances under which a pistol can be used when the person who is in manual possession of the pistol has not obtained a license, or whether the act of the General Assembly prohibiting the carrying of pistols without a license (Acts of 1910, p. 134) is to be given an absolutely literal construction. The majority of the court are of the opinion that the facts of this case bring it squarely within the rule announced by the Supreme Court in *Strickland* v. *State,* 137 *Ga.* 1 (72 S. E. 260), and that the trial judge should have admitted the evidence which he repelled, and should have instructed the jury as requested. If not directly asserted, it is at least pointedly intimated, in the opinion in *Strickland's* case, supra, that if one should drop his pistol out of the window of his home, he would not violate the law by going out on the street and picking it up, and returning with it along the street and back into his house. It was said: "A narrow and literal construction of the act might make it penal for

him to pick it up and carry it into his house. It is lawful to use pistols, but a similar construction might make it impossible for a carrier to deliver them to the dealer, or the dealer to deliver them to the customer. We will not anticipate that any such construction will be given." "The act should receive a reasonable construction." The question presented in this case is not, as our brother Pottle seems to think, an issue between the law and a mawkish sympathy for an outraged husband. The question really presented is whether the law shall be given what the Supreme Court denominates "a nar-row and literal construction," which might tend to render this wise legislation unconstitutional, or whether that "reasonable construction" which is commended by the Supreme Court shall be applied in aid of the manifest intention of the General Assembly to pass an act which would prohibit the useless, dangerous, cowardly, and criminal practice of habitually carrying weapons of death, without depriving any citizen of his rights of self-defense, or without so abridging those rights as to render their possession a mere hollow pretense

Our holding in this case is not confined in its effect to the facts of this particular case, but we are brought face to face with the question whether the Supreme Court, when it said (in answer to our inquiry as to whether the act was constitutional) that "the act should receive a reasonable construction," contemplated any exception whatsoever to its strict letter, under which proof that a license was obtained would be the only defense left open to one shown to have been in possession of a pistol at a place other than his home or place of business, if he does not belong to one of the classes which the law expressly excepts from its operation. Clearly, the statement that the law is to be given a reasonable construction (when we bear in mind the instances referred to in illustration of what is meant by the term) can not be otherwise construed than as a statement that some instances may be imagined and some circumstances may arise in which it would be unreasonable to hold to an absolutely literal construction of the language of the act. If so, we should undoubtedly be compelled to hold that one whose life had been threatened, and whose very existence was in imminent peril— not from the fact that threats had been made, but from the undeniable evidence that these were to be made immediately effective— would not be required to take even fifteen minutes to get a license,

when perhaps it was perfectly apparent to himself and to every by-stander that unless he got a pistol within five minutes, or less time, the license would be entirely useless, for the reason that it could serve no possible office for a dead man. The license is intended only for the living. It will not be accepted for ferriage on the river Styx. In an observance of this law according to a strict and literal construction, a good citizen might prefer to die rather than to use his neighbor's pistol without having obtained a license which would entitle him to the manual possession of a pistol, even though under the circumstances the law of the land would justify the use of a pistol in committing a homicide. But we hardly think that the General Assembly had any citizen of that type in mind at the time of the passage of the legislation in question. The prevention by a husband or father of an impending act of adultery is justified upon the principle which permits to one who is assailed the use of a deadly weapon to prevent a felonious assault or a homicide. And for that reason we do not think that the question of sympathy, in the slightest degree, affects us. The judgment of the majority is controlled solely by the application of the same rules of reasonable construction which have heretofore been applied by this court in *Jackson* v. *State,* 12 *Ga. App.* 427 (77 S. E. 371), *Cosper* v. *State,* 13 *Ga. App.* 301 (79 S. E. 94), *Amos* v. *State,* 13 *Ga. App.* 140 (78 S. E. 866), and other cases.

PoTTLE, J., dissenting. This is a case in which I must draw a distinction between the man and the judge. As a man, my sympathy is entirely with the outraged husband, if his statement of the transaction be true, and I wish that the law might be as announced by the majority. As a judge, I have nothing to do with what the law ought to be, but only with what it is. There is no such exception in the statute as the one declared by the court, and I do not think we have any authority to read it into the statute. If the logic of the ruling thus announced be followed, every trial for a violation of this statute will develop into a determination of the issue whether or not the accused was carrying the pistol for a lawful purpose. The law does not permit such an inquiry.