PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. AUGUSTO DIEPPA, Defendant and Appellant.

No. 4622. Argued March 15, 1932.—Decided April 8, 1932.

B. *Guerra-Mondragón* for appellant.   E. *Díaz Viera, Assistant Fiscal,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Augusto Dieppa was charged with having wilfully, unlawfully, and maliciously carried on his person a revolver on the 7th of May, 1931, in the town of Juncos, for the purposes of offense and defense. The case was first tried in the Municipal Court of San Lorenzo and then in the District Court of Humacao. Dieppa appealed to this Court from a judgment of conviction rendered by the district court and has filed through his attorney a lengthy brief in support of his appeal.

There is no doubt that the complaint is sufficient. The defendant does not attack it. We shall examine the evidence.

The evidence for the prosecution consisted in the testimony of several witnesses and the production of the revolver seized on the accused by one of the witnesses on the date and at the place stated in the complaint. Isabelo Zayas, the first witness to take the stand, testified that he had a quarrel with the defendant and on the night in question he saw him crossing the square and addressed some aggresive remarks to him; that the defendant entered an alley and the witness went on talking with some people when almost immediately he heard some shots fired behind him. Policeman Santiago, who was the next witness, stated that he heard several shots, walked to the place, and found the defendant carrying a revolver which he seized from him. The other witnesses testified similarly.

The evidence for the defense consisted in the testimony of Virgilio Rodríguez, Gil Figueroa, Santiago Mojica, Ramón Ramos, and of the accused himself. The first testified that he owns a fruit stand and on the night in question the defend-

ant asked for some fruit which he did not have and shortly afterwards he returned running and seized a revolver of the witness lying on a table; that he went out and then the witness immediately heard some shots. The following is taken textually from the transcript: "On cross-examination by the district attorney the witness testified that he did not know the caliber of the revolver. He had had said revolver for a year, but he never carried or use it. When directed by the district attorney: 'Will you kindly open it?' the witness tried to open it but could not. Upon being questioned again by the district attorney: 'Can you not open your revolver?' the witness said: 'I have tried to open it but have never succeeded; I have not used it.' He bought it for seven dollars on the street from a peasant whose name he did not know." Figueroa testified that he was at the fruit stand of Rodríguez and saw the defendant when he came first and then returned, corroborating in the above particulars the testimony of Rodríguez. Mojica was present when Zayas insulted the accused and when "Zayas made a movement as if to grab his pocket thus and Augusto Dieppa then turned back immediately, rapidly, and when he emerged he began to shoot. The witness does not know at whom he was shooting. Augusto Dieppa was shooting high, into the air. He fired four shots." Ramos testified similarly. The testimony of the defendant is in the same sense. The following is transcribed from his answers when cross-examined by the prosecuting attorney:

" . . . . he passed in front of the pharmacy towards the square and there in the pharmacy he heard insults, insulting words, uttered by Isabelo Zayas, and he saw the latter in the attitude as if to draw a weapon. That it is a fact that he then conceived the idea of arming himself for self-defense, and that is why he went to the house of Don Rodrigo where he had seen a revolver and where he arrived running and took the revolver with the intention of defending himself in case he was attacked, keeping its holster, and went out running and fired the shots. . . . He seized the revolver for self-defense

in case of attack, but it was not his intention to avenge the threats and remarks he had heard. The witness will be thirty-nine years old on the sixteenth of October.''

The appellant maintains that this is a case of the accidental carrying of a weapon, which does not constitute a crime according to the decisions of this Court in *People* v. *Ríos,* 41 P.R.R. 759; *People* v. *Santiago,* 34 P.R.R. 766; and *People* v. *Moll,* 28 P.R.R. 733; the decisions of the Court of Criminal Appeals of Texas in *McQueen* v. *State* 177 S. W. 91.; *Rees* v. *State,* 263 S. W. 910; and those of the Court of Appeals of Georgia in *Amos* v. *State,* 78 S. E. 866; and *Harris* v. *State,* 85 S. E. 813.

The appellant not only cites the foregoing cases from Texas and Georgia but he analyzes them regarding the facts and principles involved, thus rendering easier their consideration by this Court. This study enables us to assert without hesitation that the situations are different and that the doctrine of the accidental carrying of a weapon is not applicable to the facts in the case at bar. As regards the decisions of this Court invoked by the appellant, those in the *Santiago* and *Ríos* cases, *supra,* are adverse to his contention, and the decision in the *Moll* case, *supra,* reveals facts very different from those of the present case.

However, it would be sufficient for an affirmance of the judgment to state that the court was not bound to believe the witnesses for the defendant and that, as the evidence for the prosecution which was believed by the court shows a clear case conforming to the complaint, the judgment was fully supported by the record.

Perhaps this was really the conclusion reached by the court. We only know its judgment.

But even conceding that full credence should be accorded to the evidence for the defense, such evidence shows, in our opinion, that the defendant was unlawfully carrying the revolver.

The defendant was insulted, but the insults ceased, and he withdrew without being charged. No weapon was needed by him either for defending himself, for calling the attention of the police, or for complaining of the occurrence of which he had been the victim. Although the revolver was not his, he seized it of his own will, went out into the street with it on his person for his self-defense, according to his own admission, and fired it. What was his intent? To harm? To provoke? To frighten? It makes no difference. It clearly appears that, according to his own evidence, he carried for the purposes of offense and defense a weapon prohibited by law; and we say for the purpose of offense because the second part of the occurrence was due entirely to his own initiative. Although shooting into the air, it was he who then opened fire—an act whose consequences might have been serious if the person who had previously insulted him, fearing an attack, should have engaged him in a fight.

The judgment appealed from must be affirmed.

Mr. Justice Wolf took no part in the decision of this case.