REED *v.* THE STATE.

No. 14508.   MAY 6, 1943.

846

*Thomas A. Jacobs Jr.,* and *A. T. Walden,* for plaintiff in error. *T. Grady Head, attorney-general, Charles H. Garrett, solicitor-general,* and *Maud Saunders,* contra.

ATKINSON, Justice. ■ Under the first special ground of the motion the accused assigns error on the court's permitting Whitmire (the military policeman) to testify: "Q. How long were you sick from your wounds? A. About the last—An objection was interposed, admitting the shooting to be relevant, but contending that "the seriousness or nature of his wounds was not material." The court overruled the objection, and the witness testified: "I was kept in the hospital for thirty days. I am still in the hospital." The record shows that this witness had already testified, without objection, as follows: "The bullet went in here and came out about there [indicating]. It went in the lower part of my chest or the upper part of my abdomen, slight to the right of the center, and came out behind my right shoulder." Upon cross-examination of this witness the attorney for the accused brought out the following: "The bullet went in me in here [indicating] and came out here [indicating]. It did not hit a rib or anything, but just fractured one, . . fractured the fifth rib."

"It is a general rule of practice based upon sound principle that the admission of evidence over a party's objection will in no event require the grant of a new trial when substantially the same evidence is admitted without objection." *Herndon* v. *State,* 178 *Ga.* 832 (174 S. E. 597). Aside from the foregoing, the witness had been shot by the accused in the same transaction in which the accused had killed another person; and the fact that the witness had been treated at a hospital could not have been injurious to the accused.

2. The accused objected to the introduction of an ordinance of the City of Macon, to wit: "Disorderly conduct defined. It shall be unlawful for any person to act in a violent, turbulent, boisterous, indecent, or disorderly manner or to use profane, vulgar, or obscene language in the city, tending to disturb good order, peace, and dignity in said city." The objections were (a) that the ordinance, to be admissible, had to be pleaded, (b) that it was too indefinite and uncertain to be enforced, (c) that there was no evidence to authorize it. None of these objections has any merit. It was not necessary for the ordinance to be incorporated in the indictment. The ordinance is not too indefinite and uncertain to be enforced, and there was evidence authorizing its introduction. It was admissible for the purpose of showing the authority of the city policeman to make the arrest. *Porter* v. *State,* 124 *Ga.* 297 (52 S. E. 283, 2 L. R. A. (N. S.) 730); *Glaze* v. *State,* 156 *Ga.* 807, 813 (120 S. E. 530).

Grounds 3, 4, and 5 are expressly abandoned.

Grounds 6 and 7 are predicated on the charge of the court on the subject of mutual combat as related to voluntary manslaughter. The court charged as follows: "Now, gentlemen, there is another principle of law which I will give you in charge in this case, but I charge you that you should not proceed to apply this principle to the case unless you should first find certain facts to exist; and that principle is the law of mutual combat; and it is involved if two persons on a sudden quarrel, each being willing to fight, engage then and there in a mutual fight with weapons, and one kills the other as a result of passion engendered by such combat, such a killing is voluntary manslaughter. Before you consider these instructions gentlemen, which instructions have been given to you with reference to the law of mutual combat, I caution you that you would have to be satisfied from the facts of the case

that both the deceased and the defendant were mutually agreed and willing to fight with weapons upon a sudden quarrel. It is not necessary that there should be an express agreement that two persons are to engage in mutual combat; but if the parties are in fact willing, both expectant, that the difficulty is to be fought out with weapons, the difficulty is launched upon a sudden quarrel, and each person draws a weapon and engages in mutual combat, and one slays the other as a result of passion engendered by such combat, then the one slaying is guilty of voluntary manslaughter. Now, gentlemen, if you believe that the defendant, Edmund Reed, did kill the deceased, J. G. Favors, unlawfully and intentionally, but that in so doing he was not actuated by malice, either express or implied, but that he was actuated by that sudden violent impulse of passion supposed to be irresistible, about which I have just charged you, or that said killing was the result of passion engendered by mutual combat as that has just been defined to you, then your verdict should be one for voluntary manslaughter."

The objections and alleged errors to this charge are voluminous and cover many pages, but may be adequately covered as follows:

(a) Accused alleges that it was error to include the following portion, "both expectant that the difficulty is to be fought out with weapons, the difficulty is launched upon a sudden quarrel, and each person draws a weapon and engages in mutual combat," because "it put upon the accused the burden of establishing that the deceased intended to fight with a weapon, was willing and expectant that the difficulty be fought with weapons, and that the accused must prove that the deceased drew a weapon when engaged in a sudden quarrel." There is nothing in the charge complained of that would place the burden on accused to prove any fact necessary to constitute mutual combat.

(b) Accused alleges that it was error for the court, in defining mutual combat as related to voluntary manslaughter, to describe and define it so as to make it necessary, before mutual combat would exist, for it to appear that both draw weapons, or that both strike blows. It is not necessary to pass upon the correctness of this extract from the charge, because in the instant case three witnesses were introduced by the accused, Horace Foster, Bill Crusselle, and Andy Anderson, who testified that both the accused and the deceased had weapons and they both struck blows, the deceased

striking with a blackjack and the accused shooting with a pistol. If the charge complained of contained requirements to constitute mutual combat that should ordinarily not be included in its definition, still in the instant case it was adjusted to the evidence of the accused and could not have been injurious to his case.

(c) Accused alleges that by the last paragraph of the charge set forth above, the court commingled and confused the general law of voluntary manslaughter with the law of mutual combat as related to voluntary manslaughter. Just preceding the charge above set forth the court had charged generally on the law of voluntary manslaughter as contained in the Code, § 26-1007, and the last paragraph of the charge set forth above was summarizing and explaining the two circumstances under which the jury could find the accused guilty of voluntary manslaughter, and was not error for any reason assigned.

■ Under grounds 8 and 10 the accused alleges error in the charge of the court stating that a police officer of a municipality has a right to make an arrest without a warrant for a crime committed in his presence. There are two portions of the charge objected to, and several objections under each; but all objections are based on the position that an officer has no right to make an arrest for a crime committed in his presence, except where it is made to appear that the officer has not had time and opportunity since the commission of the offense to procure a warrant. The rule is that an officer has a right to arrest for a crime committed in his presence; but there is an exception to this rule, which provides that the rule does not apply if the officer does not act on the occasion he sees the crime committed, but delays and seeks to make the arrest on a subsequent occasion after he has had ample time and opportunity to procure a warrant. The rule will be found in the Code, § 27-207, and decisions of this court. *Graham* v. *State,* 143 *Ga.* 440 (85 S. E. 328, Ann. Cas. 1917A, 595) ; *Glaze* v. *State,* supra; *Faulkner* v. *State,* 166 *Ga.* 645 (144 S. E. 193), and cit. Cases where the exception to this rule has been applied are *Porter* v. *State,* supra; *Yates* v. *State,* 127 *Ga.* 813 (56 S. E. 1017, 9 Ann. Cas. 620), yet each of these cases recognizes the rule as above stated, but applies the exception because the arrest was attempted subsequently to the time the crime was committed, and after there had been sufficient opportunity to procure a warrant. We may add

further, that where a crime is committed in the presence of an officer, it is not only his right then and there to arrest without a warrant, but it is his duty to do so. *Earl* v. *State*, 124 *Ga.* 28 (52 S. E. 78). There is no evidence in the instant case that would have authorized the court to charge on the exception to the rule above stated.

■ The ninth ground alleges error in that portion of the charge of the court dealing with the law of arrest without a warrant when the crime is committed in the presence of the officer; the court charging in substance that if accused was in possession of a pistol in violation of the Code, § 26-5103, in the presence of the deceased, the deceased had a right to arrest the accused. This was alleged to be error for the reason that the court should have gone further and qualified the charge by adding that the possession of the pistol would not be in violation of the law if the accused suddenly "acquired possession of the pistol . . for immediate self-defense," or "if the possession was a mere temporary possession with no intent to have or carry the weapon about his person from place to place."

Where a person is being prosecuted for carrying a pistol without a license, he may defend the charge on the ground that his possession was not illegal. It has been held that one who finds a pistol on a public road and carries it to his home solely for the purpose of safe keeping does not violate the law. *Cosper* v. *State*, 13 *Ga. App.* 301 (79 S. E. 94). The manual possession of a pistol for such a length of time as is necessary to examine it with a view to its purchase is not an illegal possession. *Jackson* v. *State*, 12 *Ga. App.* 427 (77 S. E. 371). In a sudden emergency when the use of a pistol is absolutely necessary for defense of person, family, or property, momentary carrying for that purpose is not unlawful. *Amos* v. *State*, 13 *Ga. App.* 140 (78 S. E. 866) ; *Harris* v. *State*, 15 *Ga. App.* 315 (85 S. E. 813).

While it is true that our courts have recognized the above instances as good defense to the charge of carrying a pistol without a license, still there is an entirely different principle of law involved in determining the legality of an arrest of one who is in possession of a pistol, and in determining, upon a trial, whether or not the possession of the pistol was lawful. Upon the trial the State makes out a prima facie case of guilt on proof that the accused had in his

manual possession a pistol outside of his home or place of business; and it is then incumbent on the accused to establish a lawful possession. *Blocker* v. *State,* 12 *Ga. App.* 81 (76 S. E. 784) ; *Brown* v. *State,* 15 *Ga. App.* 484 (83 S. E. 890) ; *Elkins* v. *State,* 17 *Ga. App.* 479 (87 S. E. 713) ; *Webb* v. *State,* 18 *Ga. App.* 44 (88 S. E. 751).

In passing upon the right of an officer to make an arrest of one who is in possession of a pistol on the public street of a city, where the possession of a pistol makes a prima facie case, the possession in the presence of the officer determines the right of the officer to make an arrest, even though upon the trial of the case the accused might present a legal defense. Accordingly it was not error for the court to omit to charge that the possession of the pistol would have been lawful if the possession was merely temporary, or if the possession was suddenly acquired for immediate self-defense. In the instant case the accused had a pistol in his hand when the deceased officer approached and sought to arrest him; and if the accused felt that he was entitled to have the court charge upon circumstances that would have authorized the jury to determine that his possession was a legal one, a proper request should have been made therefor. We do not pass on whether it would have been error for the court to decline to give such a charge, as there is no evidence in the record that would show that the deceased had any knowledge of any circumstances justifying such possession of the pistol.

■ Under ground 11 accused alleges error in the court's omission, without request, to charge as follows: "That if the jury found that the deceased was undertaking to make an illegal arrest, and the accused killed the officer to prevent an illegal arrest being made, the jury would have the right to grade the offense voluntary manslaughter." On this subject the court charged:. "An attempt by an officer to make an illegal arrest is itself an unlawful assault and, as such, may give rise to a heat of passion on the part of the person sought to be arrested; if such person, under such circumstances, acting solely from a heat of passion, and without any mixture of deliberation or malice, either express or implied, kills the officer, the killing would not be any greater offense than voluntary manslaughter." Accordingly there is no merit in this exception.

■ Attorneys for the accused in their briefs and oral arguments before this court insist very strenuously that the verdict in this

852

case is not a correct verdict, and that if the accused was found guilty of any crime it should not have been for more than voluntary manslaughter. The court charged to the jury the law of murder, voluntary manslaughter, and every phase of justifiable and excusable homicide that was applicable to the evidence. There was evidence to support a verdict under either grade of homicide, and it was the duty of the jury to apply the law as given by the court to the evidence and return a verdict for the particular grade of homicide that in their judgment was applicable. The Supreme Court being a court for the correction of errors of law, it is not the province or within the power of this court to grant a new trial and set aside a verdict of the jury, even though we should disagree with the jury's application of the facts, where there is sufficient legal evidence to support the verdict and it has received the approval of the trial judge. *Judgment affirmed.* *All the Justices concur.*