THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ GIL DE LAMADRID ET AL., Defendants and Appellants.

No. 14056. Argued January 10, 1950.—Decided February 24, 1950.

*F. Hernández Vargas* for appellants. *Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court* and *Fernando Fornaris, Jr., Assistant Fiscal,* for appellee.

Per Curiam: The appellants herein were convicted of the offense of carrying weapons and sentenced to two months' imprisonment in jail. They contend on appeal that the lower court erred (1) in refusing to suppress evidence obtained by means of unlawful persecution, arrest, and search; (2) in convicting them of the offense, since the very evidence of The People showed that the carrying was incidental, and (3) in not imposing on them the minimum penalty.

The evidence which the lower court had before it, as correctly summarized by the Assistant *Fiscal* of this Court in his brief, is the following:

"The evidence of the Prosecuting Attorney consisted in the testimonies of: *Emilio Torres Pérez,* detective, who testified that on or about October 4, 1948, while he was on duty during the afternoon hours in the University of Puerto Rico, he saw Harry García Dominicci, José Vázquez Guevara, José Gil de Lamadrid, and Celia Josefa Canales in the Café Universitario together with a young man by the name of William Colón; that William Colón was carrying a small black bag; that the above-mentioned persons got inside the automobile license No. 20730, driven by José Vázquez Guevara; that in a jeep of the Government he followed the aforesaid automobile which proceeded towards Santurce and upon reaching Stop 26 went up Sagrado Corazón Street, took several turns around the streets of Barrio Obrero and stopped at the house at No. 1928, Eduardo Conde Street, where all the passengers alighted and went into the house,

William Colón carrying the bag; that he saw the group at once go out from the back part of the house into the yard; that he heard gun reports, approached the yard adjoining the house at No. 1928, and noticed that José Vázquez Guevara was firing a small 24-caliber pistol of a dark blueing; that while this was going on, Harry García Dominicci was firing shots with a black 32-caliber Colt revolver, also of a dark blueing and with a rather long barrel; that Vázquez fired some four or five shots to the wall, and then removed the clip from the pistol, inserted another and gave the pistol to José Gil de Lamadrid who fired to the wall at a jar and at a tin can they had placed over some stones; that he (the witness) said to Gil de Lamadrid: 'You certainly have a bad aim'; that he told him that from the yard adjacent to the house at No. 1928, from where he watched the defendants shooting; that Gil de Lamadrid returned the pistol to Vázquez Guevara, who started rummaging through it and reloaded it; that he went from the yard to the street to try to get in touch with his chief by radio in order to explain the situation to him and receive orientation; that he tried to get in touch with the chief to explain the situation to him because the shots were being fired in a private yard and he did not have the owner's authority nor did he know who was the owner of the house in order to arrest those people for carrying weapons; that when he was trying to get in touch with the Chief of Detectives, Captain Guillermo Arroyo, Assistant Chief and Adjutant of the Insular Police, passed by and told him that he would be back within five minutes; that after Captain Arroyo left, he remained heedful of the events because they kept on firing, and then he noticed that the shooting ceased and that Vázquez put the pistol inside the bag, and also saw that Harry García Dominicci put the revolver inside the same bag and that all of them went out to the street; that then, together with Corporal Basilio Acosta, he asked them where they had their licenses to carry weapons, whereupon Gil de Lamadrid replied that they had no weapon of any sort; that the last one to come from the house to the sidewalk was García Dominicci, who handed over the bag to Celia Josefa Canales, who put it inside the automobile and sat down covering it with the skirt; that Captain Arroyo requested Miss Canales to alight from the automobile, and seized the bag; that upon opening the bag they found inside the two weapons and he noticed that the revolver and the pistol were warm; that when this last thing happened all were

already arrested; that he had heard the shots before going into the yard adjacent to the house at No. 1928; that he heard the shots from the sidewalk in front of the house in which the defendants were; that from the street he saw the defendants fire; that at the time he did not see any petard there; that he saw the weapons first in the hands of the defendants and later on, inside the bag; that when Captain Arroyo took out the bag from the automobile, the latter was not locked; that they did not have any warrant of arrest against any one of the members of the group; that according to his knowledge, the defendants were not committing any other offense except the offense of carrying weapons; that the young people were in a rather friendly attitude towards him; that the defendants apparently were not disturbed upon seeing him because they continued shooting; that Chief Arroyo arrived at the site of the events while the members of the group were coming out of the house and when he and his companion were questioning Gil de Lamadrid; that when Chief Arroyo seized the bag all were already arrested.

"*Guillermo Arroyo,* Adjutant of the Insular Police of Puerto Rico, testified that during the last hours of the evening of October 4, 1948, upon arriving at the corner of Castro Viñas and Eduardo Conde Streets, a detective stopped him and asked him to go with him to the sidewalk in front of a house where there were José Gil de Lamadrid, Vázquez Guevara, García Dominicci, Miss Canales, Irma Viscal, and five detectives; that the owner of the house, Miranda, was showing a 25-caliber Mausser pistol to the detectives and telling them that that was the only weapon he had in his house; that at that moment Harry García Dominicci was bringing from the yard of Mr. Miranda's house a small black bag which he delivered to Celia Josefa Canales who opened the door of the car and hurriedly threw the bag inside; that then he ordered Miss Canales to alight from the car, which she did, opened the bag and found inside a 25-caliber pistol No. 421580 and a 32-caliber Colt revolver No. 215475; that they proceeded then to take the young people to headquarters; that when he arrived there they were already arrested; that later on, at approximately 8 o'clock p.m., he returned to Miranda's house accompanied by District Attorney Gil and on one of the walls of the yard they found no less than 45 bullet impacts entirely recent, 8 25-caliber pistol shells and 8 of 32-caliber, and 5 bullets flattened by the impact against the wall, as well as an empty box of 25-caliber cartridges for pistols;

that they also found an unfired firecracker, and the remainings of a petard; that he did not have to order the arrest of the defendants because they were already arrested; that Mr. Miranda's pistol was of 25 caliber, but it was all rusty inside, which proved that it had not been fired; that when they seized the pistol and the revolver in possession of the defendants, said weapons were still warm.

"*Luis Felipe Miranda* testified that on or about October 4, 1948 he lived in No. 1928 Eduardo Conde Street; that the only one he knew prior to that date was José Gil de Lamadrid; that on the aforesaid date, and approximately at 5:30 p.m., José Gil de Lamadrid, Harry García Dominicci, José Vázquez Guevara, and Celia Josefa Canales were in his house; that he invited them to go to the yard of his house while he remained in the living room taking care of another visitors; that while he was in the living room he heard shots, but they did not call his attention; that after the shots, he saw the aforesaid persons going out of his house; that he noticed that a detective was arguing with the young people alleging that they were firing; that the detective told him that the young people were shooting in his yard and he answered that that was not true; that he saw when Chief Arroyo took out a bag from the boys' car; that his pistol was a 25-caliber Mausser; that later on, at nightfall, Chief Arroyo and District Attorney Gil came to his house; that he invited them in; that Gil indicated that he wanted to see the yard, to which he agreed willingly; that there were some targets and perforations in the yard; that they picked up 25 and 32-caliber bullet shells from the floor; that for approximately 9 or 12 months he had not fired there; that Gil de Lamadrid had been in that place on other occasions and had shot at a target with a 22-caliber rifle belonging to him; that he did not see any of the defendants or members of the group carry the bag into his house; that he did not see any of those persons come into his house with weapons; that he did not see them carrying weapons upon leaving; that he did not think that his weapons were being fired because they had no bullet; that no neighbor has complained because he shoots in that place; that he did not see the weapons taken from the dining room of his house where he had put them in order to show them to the defendants; that his pistol was not loaded, and he kept the bullets in the chest in his room; that he neither showed the bullets to the defendants nor did they ask him for them; that on other occasions when

several persons or he have shot at the target they have always used the 22-caliber rifle; that he does not have in his house any 32-caliber weapon nor cartridges of the same caliber; that he did not see Harry García Dominicci come out of his house with a bag in his hands because he did not look at García Dominicci's hands.

"The evidence for the defense consisted in the testimony of: *Basilio Acosta,* Insular policeman, who testified that on or about October 4, 1948 he was on special duty in the University of Puerto Rico; that at 4 or 5 p.m. of that day he saw the defendants together with other persons going towards Santurce and he followed them in a jeep; that they stopped in front of Luis Miranda's residence.

"*Lucy García de Torres,* testified that on October 4, 1948 she lived in No. 1930 Eduardo Conde Street, next to Luis Felipe Miranda; that she does not recall that on the afternoon of said day, while she was at home, any person asked her permission to go into the yard; that said yard was not open to the public, and has a fence and a gate, which gate is closed with a small latch; that she heard petard or gun reports; that she does not know from where said reports came nor did that frighten her because there are some motors in front; that she did not see the detectives enter, nor any detective firing shots; that she is unable to assure that the gate was closed that day.

: "*América López,* daugther of Lucy García de Torres, testified that she was at home on October 4, 1948; that the gate of the yard was locked with a latch; that some men opened said gate and went into the yard without leave, policeman Emilio Torres Pérez being one of said men; that after said men, a large number of people went into the yard without asking leave; that she did not tell them not to enter and let everyone come in peacefully; that she heard reports that day and she is used to hearing the noise of motors.

"*José Gil de Lamadrid* testified that in the afternoon of October 4, 1948 he was in the Café Universitario of Río Piedras; that Vázquez Guevara arrived, with whom he went towards Santurce; that they arrived at Luis Felipe Miranda's house; that upon entering said house, Mr. Miranda was unable to take care of them immediately, on account of which they went to the yard to wait for him; that there in the yard, feeling persecuted by the insular police, he decided to try to be pre-

pared for self-defense and started shooting with Luis Felipe Miranda's pistol; that he sent for a box of cartridges for said pistol."

■ Discussing the first assignment of error the appellants maintain that they were the object of an unlawful persecution on the part of the policemen, in following the automobile in which they, together with other persons, were going from Río Piedras to Luis Felipe Miranda's house, in Barrio Obrero, in Santurce—for which purpose the detectives used two jeeps —without their having committed any offense, and without the policemen having warrants of arrest against them. The record does not disclose, however, that there had been the least interference on the part of the peace officers during appellants' trip from Río Piedras up to Barrio Obrero. And we fail to see any illegality in the action of the policemen in traveling through public streets without interfering with or curbing appellant's freedom on their way to Barrio Obrero.

■ Appellants also contend that the police could have obtained a warrant in order to arrest them, but since they failed to do so the evidence obtained as a consequence of said arrest was inadmissible. They refer to the weapons utilized by the appellants to shoot in the yard of Miranda's house—a revolver and a pistol—a small leather bag within which appellant García Dominicci carried said weapons when coming out of Miranda's house, and several cartridges and shells. Was the warrant of arrest, however, necessary? We do not think so.

Both Lamadrid as well as García Dominicci were seen by the detective Torres Pérez carrying firearms during the shooting in the yard of Miranda's house. While this was taking place he did not arrest them—as he could have done— but rather he waited until the appellants ceased firing and came out to the sidewalk in Eduardo Conde Street, after both had deposited their weapons inside a small black bag which, when coming out, García Dominicci took with him. Under the circumstances of the case we believe that the arrest of

both was lawful, despite the fact that it was not made while they were carrying the weapon and firing in Miranda's yard, inasmuch as the crime was committed in the presence of the policemen,[1] and the arrest was made at the first reasonable opportunity, almost immediately after the firing ceased, when the circumstances permitted said arrest, without fearing a possible affray between the policemen and the appellants. The policemen did not depart from the neighborhood of the place of the occurrence, nor did they lose sight of the appellants. Therefore a warrant of arrest was not necessary.[2]

■ The appellants finally maintain that the search was illegal on the ground that it was made by an officer who did not actually see the events. They are mistaken. Once lawfully arrested, any other peace officer could make the search, even a private citizen under orders or at the request of a peace officer.

■ The other issue raised by the appellants in the discussion of the first error lacks merit. According to them they were not informed of the crime for which they were arrested. However, the record discloses that the policemen asked them for their licenses to carry weapons and when they failed to produce them they were arrested, after the weapons were seized.

■ The second error is to the effect that the evidence for the prosecution showed that the carrying of the weapons was incidental.

The theory of incidental carrying, based on the fact that somebody else furnished and handed over the weapons to the appellants within Miranda's yard, deserves no serious consideration. The appellant Gil de Lamadrid testified at the trial that while in Miranda's yard he decided to make good use

---

[1] Section 116(1), Code of Criminal Procedure.

[2] Cf. *People* v. *Hernández*, 23 P.R.R. 55; *Yates* v. *State*, 56 S. E. 1017, 9 Ann. Cas. 620; *State* v. *Lewis*, 33 N. E. 405; *Wahl* v. *Walton*, 30 Minn. 506; *Town of Hartford* v. *Davis*, 150 S. E. 141; Note, 84 Am. St. Rep. 679, 687.

of the time, to be prepared for self-defense, and to that effect he started shooting with Miránda's pistol, sending for a box of cartridges. (And while he was firing with the pistol, García Dominicci was doing likewise with a revolver.) Appellants' theory is not supported by the evidence.

 Finally, we do not see how can the appellants seriously argue that the lower court erred in sentencing each one to two months' imprisonment in jail.

It is incumbent on the trial judge to exercise his discretion in the imposition of the penalty. And we do not find that in this case the lower court committed any abuse whatever in the exercise of said discretion in imposing less than half of the penalty assessed by the crime of which they were convicted.

The judgments appealed from will be affirmed.

Mr. Justice Tood, Jr., did not participate herein.