21901, 21902.  CANTRELL v. MAYOR & COUNCIL
OF MT. AIRY et al.; and vice versa.

Argued January 15, 1963—Decided February 11, 1963.

*Linton K. Crawford, Kimzey & Crawford,* for plaintiff in error.
*Otis J. Bouwsma, Scott & Bouwsma, Walter R. Looney,* contra.

MOBLEY, Justice. ■ (a) "Equity will take no part in the administration of the criminal law. It will neither aid criminal

courts in the exercise of their jurisdiction, nor will it restrain or obstruct them." *Code* § 55-102; *Gault v. Wallis,* 53 Ga. 675 (4); *Phillips v. Mayor &c. of Stone Mountain,* 61 Ga. 386; *Garrison v. City of Atlanta,* 68 Ga. 64; *Pope v. Mayor &c. of Savannah,* 74 Ga. 365; *Landers v. Georgia Public Service Commission,* 217 Ga. 804, 813 (125 SE2d 495). The rule stated in *Code* § 55-102 really admits of no exception. *Jewel Tea Co. v. City Council of Augusta,* 183 Ga. 817, 818 (190 SE 1); *City of Atlanta v. Universal Film Exchanges,* 201 Ga. 463, 470 (39 SE2d 882). So-called "exceptions" to the rule are those cases in which equity takes jurisdiction for the purpose of preventing irreparable injury to property or property rights, the petitioner having no remedy at law which would provide adequate protection therefor. Those cases will not be viewed as exceptions when one realizes that equity takes jurisdiction in them not because of the criminal feature of the case, but despite it, acting not for the purpose of administering the criminal law but for the purpose of preventing irreparable injury to property or property rights, ignoring the fact that one result of its assumption of jurisdiction may be to oust the jurisdiction of a criminal court. *Jewell Tea Co. v. City Council of Augusta,* 183 Ga. 817, 818, supra. For full-bench decisions of this court in which equity has been held to have jurisdiction to prevent irreparable injury to property or property rights, the petitioner having no adequate remedy at law, see: *City of Atlanta v. Gate City Gas Light Co.,* 71 Ga. 106, 107 (5); *Cutsinger v. City of Atlanta,* 142 Ga. 555, 556 (4, 5) (83 SE 263, LRA 1915B 1907, AC 1916C 280); *Baldwin v. City of Atlanta,* 147 Ga. 28 (1, 2) (92 SE 630); *Brown v. City of Thomasville,* 156 Ga. 260 (1) (118 SE 854); *Great A. & P. Tea Co. v. City of Columbus,* 189 Ga. 458 (1) (6 SE2d 320); *Braddy v. City of Macon,* 194 Ga. 871 (1) (22 SE2d 801); *New Mission Baptist Church v. City of Atlanta,* 200 Ga. 518, 519 (3) (37 SE2d 377); *Moultrie Milk Shed, Inc. v. City of Cairo,* 206 Ga. 348 (1) (57 SE2d 199).

The only right alleged by the plaintiff in this case is his right as a municipal police officer of the City of Cornelia, Georgia, and as a citizen of this State, to pursue a person into the Town of Mount Airy, Georgia, and there arrest him for violations of

ordinances of the City of Cornelia and statutes of the State of Georgia. Whatever may be the scope and nature of his right to do so, that right is not a property right in the sense necessary to give equity jurisdiction in this case. See as to the right of a municipal officer to arrest: *Reed v. State,* 195 Ga. 842, 843 (4) (25 SE2d 692); *Earl v. State,* 124 Ga. 28, 29 (2) (52 SE 78); *Shirley v. City of College Park,* 102 Ga. App. 10 (2) (115 SE2d 469). See as to the failure to allege a property right: *Hunter v. City of Atlanta,* 212 Ga. 179 (1) (91 SE2d 338). While in *City of Atlanta v. Gate City Gas Light Co.,* 71 Ga. 106, 107 (5), supra, equity ignored the criminal feature of the case and took jurisdiction to prevent irreparable injury to what the court called "civil rights," a reading of that case reveals that the civil rights there under consideration were rights to the enjoyment of property.

(b) Further, plaintiff is not without an adequate remedy at law. Should he be convicted by the Police Court of Mount Airy, and should the Mayor & Council of Mount Airy affirm that conviction, he may apply for a writ of certiorari to the Superior Court of Habersham County. *Phillips v. Mayor &c. of Stone Mountain,* 61 Ga. 386, 388, supra; *Mayor &c. of Shellman v. Saxon,* 134 Ga. 29 (3a) (67 SE 438, 27 LRA (NS) 452). The trial court did not err in sustaining the defendants' demurrer and dismissing plaintiff's petition.

■ The judgment excepted to in the main bill of exceptions being affirmed leaving nothing to be tried below, the cross-bill of exceptions is hereby dismissed. *Code Ann.* § 6-901.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur, except Duckworth, C. J., and Candler, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. The second paragraph of the Constitution (*Code Ann.* § 2-102; Const. of 1945) declares that "the paramount duty of government" is the protection of persons and property which it obviously must do through officers including this policeman. In pursuing for the purpose of arresting a person who has committed a crime against the person or property of another within the City of Cornelia and is fleeing to escape punishment for his crime, the petitioner, a

policeman of Cornelia, is actually conforming to the above provision of the Constitution. To allow the officers of Mount Airy to prevent the sworn policeman of Cornelia from exceeding its speed limit while in hot pursuit of a speeding person who has committed a crime in Cornelia is to deny protection against crime and afford a fleeing criminal a guarantee of escape. A law that would sanction such would be unwise, and in the absence of law expressly allowing it this court should not so hold. Certainly *Code* § 55-102 which provides that equity will take no part in the administration of the criminal law and will not aid nor interfere with the exercise of jurisdiction of criminal courts constitutes no authority for such a holding. And to construe *Great A. & P. Tea Co. v. City of Columbus,* 189 Ga. 458 (1) (6 SE2d 320); *City of Albany v. Lippitt,* 191 Ga. 756 (13 SE2d 807); and *Moultrie Milk Shed, Inc. v. City of Cairo,* 206 Ga. 348 (1) (57 SE2d 199), which dealt with property, to mean that protection of property and nothing else would allow equity to do so is to misconceive the basic fundamental principle controlling those decisions. See *Code* § 37-120. That principle is that in all cases where there exist grounds for equitable relief it will be granted, notwithstanding that in the process criminal prosecutions are incidentally involved. In *Thompson v. Talmadge,* 201 Ga. 867, 871 (41 SE2d 883), while fully recognizing that equity had no jurisdiction to decide a purely political question or to review actions of the legislature taken in harmony with the Constitution, we said that the law was equally as well settled that "the judiciary is by the Constitution given the power and jurisdiction to adjudicate any and all justiciable questions presented to it in litigation, and that this jurisdiction of the courts is neither ousted nor impaired by the fact that there may be involved in such cases political questions, or actions by the General Assembly." The vital principle of law there declared is that courts will not shrink from adjudicating matters over which they have jurisdiction solely because involved therein are matters which standing alone are beyond their jurisdiction. As applied here that means that while equity will have nothing to do with administering criminal law per se as provided in *Code*

652

§ 55-102, yet the mere fact that criminal charges are incidentally involved does not deprive equity of jurisdiction of matters lying plainly within its jurisdiction. The basis for equity jurisdiction is the actual and threatened prevention of this policeman from performing his official duties by arrests and threatened future arrests every time he pursues a fleeing criminal at a speed in excess of that fixed by Mount Airy. A plainer case of impending danger of preventing this officer from performing his duty to protect the people against criminals could hardly be made. It is this irreparable injury which equity is asked to prevent, and if criminal prosecutions are incidentally prevented thereby, this will neither "oust nor impair" equity's jurisdiction to grant the equitable relief sought.

The driver of an authorized emergency vehicle when responding to an emergency call, or *"when in the pursuit of an actual or suspected violator of the law . . .* may exercise the privileges set forth in this section." (Italics mine). Among the privileges set forth therein that may be exercised are: "proceed past a red or stop signal . . . but only after slowing down as may be necessary for safe operation," and "exceed the speed limits specified in this law so long as he does not endanger life or property." *Code Ann.* § 68-1604 (Ga. L. 1953, Nov. Sess., pp. 556, 565). *Code Ann.* § 68-1606 of the same title (see statute above) provides that this law shall be uniform throughout all political subdivisions and municipalities, and that "no local authority shall enact or enforce any ordinance, rule or regulation in conflict with the provisions of this law unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this law."

Thus is established an absolute bar to any law in Mount Airy that seeks to prevent this policeman of Cornelia from running its red lights, its stop signs and exceeding its speed limits when he is in pursuit of an actual or suspected violator of the law but places upon him the duty not to endanger persons or property. The law tells him he can do it; his oath of office demands it of him; but Mount Airy with the sanction of this court defies the law, disregards his right and duties and

the safety of the people of Cornelia. This decision is an open invitation to criminals to flee from their crime through a municipality at a high speed, and the officers of that city will aid and abet them by stopping and arresting the officer who is pursuing them if he violates the city speed limit, although State law authorizes him to do so and forbids city interference. I would reverse the judgment.

*Justice Candler concurs in this dissent.*